# STATE OF NORTH CAROLINA

_____ Davidson _____ County

| | |
|---|---|
| *File No.* | 18 CvS |

**In The General Court Of Justice**
☐ District ☒ Superior Court Division

*Name Of Plaintiff*
David W. Harrelson and Sheri Harrelson

*Address*
C/O Stephanie W. Anderson - P.O. Box 20083

*City, State, Zip*
Greensboro      NC    27420

## CIVIL SUMMONS
☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

**VERSUS**

G.S. 1A-1, Rules 3 and 4

*Name Of Defendant(s)*
USAA General Indemnity Company

*Date Original Summons Issued*

*Date(s) Subsequent Summons(es) Issued*

### To Each Of The Defendant(s) Named Below:

| *Name And Address Of Defendant 1* | *Name And Address Of Defendant 2* |
|---|---|
| USAA General Indemnity Company<br>USAA Building<br>9800 Fredericksburg Road<br>San Antonio      TX    78288 | |

⚠️ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles! Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**
You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)*<br>Stephanie W. Anderson<br>Burton, Sue & Anderson, LLP<br>Post Office Box 20083<br>Greensboro      NC    27420 | *Date Issued* 8-24-18 | *Time* 11:59 ☒ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ Deputy CSC    ☐ Assistant CSC    ☐ Clerk Of Superior Court | |

| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date Of Endorsement* | *Time* ☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ Deputy CSC    ☐ Assistant CSC    ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

| | RETURN OF SERVICE | |
|---|---|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

NORTH CAROLINA
DAVIDSON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CvS ____

David W. Harrelson and Sheri
Harrelson,

      Plaintiffs,

V.

USAA General Indemnity Company,

      Defendant.

**COMPLAINT**

**COMES NOW** the plaintiff, by and through counsel, and hereby complains of the defendant as follows:

## PARTIES AND JURISDICTION

1.    The plaintiffs, David W. Harrelson and Sheri Harrelson, are citizens and residents of Davidson County, North Carolina.

2.    The defendant, USAA General Indemnity Company, (hereinafter referred to as "defendant USAA") is an insurance company, licensed to do business in the State of North Carolina and writes business in the State of North Carolina.

3.    Subject matter jurisdiction is proper in this Court.

4.    This Court has personal jurisdiction over the defendant.

5.    Venue is proper in Davidson County Superior Court.

## FACTUAL BACKGROUND

6.    The plaintiffs incorporate, by reference, all allegations contained in paragraphs one through five of the Complaint as if fully set forth herein.

7.    On or about November 29, 2016 at approximately 7:24 a.m., Carlton Cranford, was operating a 2001 Jeep (hereinafter referred to as "the Harrelson/Cranford Jeep") owned by the plaintiff, Sherri Harrelson and her ex-husband, Brent Cranford, when he was involved in an accident with Dawn Byrd (hereinafter referred to as "the Accident").

8.    At the time of the Accident, Carlton lived with both his father, Brent Cranford and his mother, Sheri Harrelson and stepfather, David Harrelson.

9.    At the time of the Accident, the Harrelson/Cranford Jeep was titled in both Sheri Harrelson's name and Brent Cranford's name, because they had shared in the cost of the purchase of it.

10.    At the time of the Accident, the Harrelson/Cranford Jeep was insured by Allstate Insurance (see attached Exhibit "A," hereinafter referred to as "the Cranford Allstate Policy"), pursuant to Sheri Harrelson and Brent Cranford agreeing, at the time of their divorce, that Sheri would pay for the insurance on the Harrelson/Cranford Jeep.

11.    At the time of the Accident, both Sheri Harrelson and Carlton Cranford were listed as drivers on both the Allstate Policy and on a policy issued by USAA to David W. Harrelson, his step-father (see attached Exhibit "B," hereinafter referred to as "the Harrelson USAA Policy").

12.    After the Accident, the Harrelsons gave notice of a potential claim against the Harrelson USAA policy, and the defendant denied the claim.  (See attached Exhibit "C," April 7, 2017 denial letter from USAA.)

12.    As a result of the Accident, Dawn Byrd instituted suit against Sheri Harrelson, David Harrelson and Carlton Cranford, alleging personal injuries.  (See attached Exhibit "D," hereinafter referred to as "the Underlying Action.") Furthermore, Dawn Byrd is claiming to have sustained medical bills, as a result of her alleged injuries in the Accident, in the amount of $62,362.07 and lost wages in the amount of $11,937.00.

13.    In the Underlying Action, Dawn Byrd alleged separate causes of action against Sheri Harrelson and David Harrelson, pursuant to the Family Purpose Doctrine, as, at the time of the Accident, Carlton was transporting the plaintiffs' son to school.

14.    As a result of the Underlying Action, Allstate, the carrier for the Harrelson/Cranford Jeep, tendered its available insurance coverage in exchange for a Covenant Not to Enforce any judgment against its insureds, Brent Cranford and Carlton Cranford.  (See attached Exhibit "E.")

15.    As a result of the Underlying Action, Sheri Harrelson and David Harrelson, the defendant's insureds, gave notice to USAA that they had been sued.

16. In addition, the undersigned wrote to the defendant on December 13, 2017 demanding defense and indemnification for the Harrelsons and Carlton Cranford, as excess coverage for the Underlying Action.

17. In response, on December 20, 2017, the defendant denied the claim, refusing to provide a defense or indemnification for the Harrelsons or Carlton Cranford in the Underlying Action. (See attached Exhibit "F.")

18. As a result of USAA's refusal to defend its insureds, Dawn Byrd obtained an Entry of Default against Sheri Harrelson and David Harrelson. (See attached Exhibit "G.")

19. The Harrelsons retained the undersigned to defend them in the Underlying action, incurring attorney's fees.

20. On February 7, 2018, after having the Entry of Default set aside, the undersigned again demanded defense and indemnification for Carlton Cranford and the Harrelsons.

21. On February 27, 2018, USAA again denied defense and indemnification to Carlton Cranford and the Harrelsons in the Underlying Action. (See attached Exhibit "H.")

22. On July 19, 2018, Stanley R. Hammer, attorney for Dawn Byrd, wrote to the defendant, offering to accept the coverage available under the Harrelson USAA Policy ($50,000) if it was tendered within ten (10) days and warning that he intended to seek to collect a judgment against the Harrelsons "which I am confident will be well in excess of the amount of the USAA . (See attached Exhibit "I.")

23. On July 20, 2018, the defendant wrote back to Attorney Hammer, "respectfully declin(ing) your offer since USAA has denied coverage for this loss."

24. Upon information and belief, the sole basis for the USAA denial of defense and coverage to the Harrelsons and Cranford is the "Regular Use Exclusion" contained in the Harrelson USAA Policy, which reads, in relevant portion, as follows:

**PART A EXCLUSIONS**
**We do not provide Liability Coverage for the ownership, maintenance or use of:**
**1.    Any vehicle, other than your covered auto, which is:**
      **a.    owned by you; or**
      **b.    furnished for your regular use.**

2.    Any vehicle, other than your covered auto, which is:
      a.    owned by any family member; or
      b.    furnished for the regular use of any family member.
      However, this exclusion (B.2.) Does not apply to your
      maintenance or use of any vehicle which is:
      a.    owned by a family member; or
      b.    furnished for the regular use of any family member.

      25.   The Harrelson USAA policy also contained the following
language:

**PART A LIABILITY COVERAGE**
**INSURING AGREEMENT**
**We will pay damages for bodily injury...for which any insured**
**becomes legally responsible because of an auto accident.**
**...**
**"Insured" as used in this Part means:**
**1.    You or any family member for the ownership, maintenance or**
**      use of any auto...**

**DEFINITIONS**
**Throughout this policy, "you" and "your" refer to:**
**1.    The named insured shown in the Declarations; and**
**2.    The spouse if a resident of the same household.**

      26.   Upon information and belief, at the time of the
Accident, Brent Cranford, one of the owners of the
Harrelson/Cranford Jeep, does not fit the definition of "you"
under the Harrelson USAA policy, nor would he fit the definition
of "family member" under the Harrelson USAA policy and, as such,
liability coverage should have been afforded to the
Harrelson/Cranford Jeep under the Harrelson USAA policy.

      27.   At the time of the Accident, Carl Cranford was the sole
operator of the Harrelson/Cranford Jeep and treated it as his own
and Brent Cranford, Sheri Harrelson and David Harrelson did not
use the Jeep on a regular basis.

      28.   At the time of the Accident, Carl Cranford was listed
as a driver on both the Cranford Allstate Policy and the
Harrelson USAA Policy such that no party was attempting to avoid
paying premiums for Carl Cranford.

      29.   The purpose behind the Regular Use Exclusion, as
explained by our Supreme Court, is "to prevent a family or person
from having two or more automobiles that are used interchangeably
with only one automobile being insured." NC Farm Bureau v.
Warren, 326 N.C. 444 (1990) (citing Whaley v. Ins. Co., 259 N.C.
545, 131 S.E.2d 491).

30.  At the time of the Accident, all vehicles owned by the plaintiffs were insured and Carl Cranford was listed as  a driver on both the Harrelson USAA Policy and the Cranford Allstate Policy.

31.  To date, the defendant has refused to provide the plaintiffs with a defense or indemnification in the Underlying Action, resulting in the Harrelsons incurring significant expenses by way of attorney's fees.

32.  The Harrelsons have complied with all of the terms and conditions of the USAA Policy and have paid all premiums charged for the policy.

### FIRST CLAIM FOR RELIEF - BREACH OF CONTRACT

33.  The allegations of paragraphs one through thirty-two are incorporated by reference as if fully set forth herein.

34.  Plaintiffs provided the defendant with multiple notices and demands to provide them with liability coverage, with a defense and with a settlement releasing it from liability. Nevertheless, the defendant refused to defend the plaintiffs and refused to attempt to settle the case with Dawn Byrd.

35.  Despite the plaintiffs' demand for liability coverage, the defendants failed to provide plaintiff with liability coverage, a defense or assistance of any kind despite repeated requests.

36.  The defendants willfully and recklessly ignored, avoided and failed to respond to plaintiffs' demand for defense and indemnification in the Underlying Action.

37.  Despite demand and compliance with the policy provisions, the defendant failed to provide defense or coverage as required by the USAA Policy.  This failure constitutes a breach of contract for which defendant is liable to the plaintiffs and the plaintiffs have been damaged as a result of this breach and are entitled to recover any and all damages proximately caused by defendants' breach.

### BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING/
### UNFAIR AND DECEPTIVE TRADE PRACTICES/UNFAIR CLAIMS PRACTICES

38.  The allegations of paragraphs one through thirty-seven are incorporated by reference as if fully set forth herein.

39.  During the course of the filing of a claim by the plaintiffs under the USAA Policy, the defendant failed to

acknowledge and act reasonably promptly upon communications with respect to the claim at issue; not attempting in good faith to effectuate prompt, fair and equitable settlement of the claim for which liability had become reasonably clear; delaying the investigation and/or settlement of the claim; failing to promptly provide a reasonable explanation of the basis in the Policy in relation to the facts or applicable law for denial of the claim and/or for defending under a Reservation of Rights; failing to provide prompt payment of the claim under the Policy; failing to provide a defense after being notified of allegations in the Smith matter that could fall under the liability coverage portion of the Ranger Policies, and otherwise committed unfair and deceptive acts in or affecting commerce in violation of N.C.G.S. § 75-1.1, et. seq.

40. The conduct by the defendant of wrongfully denying and/or delaying this claim constitutes a willful breach of the contract and a reckless indifference to the rights of the plaintiff under the contract, and is a breach of the duty of good faith and fair dealing owed under the USAA Policy. As a result of this breach, the plaintiffs are entitled to actual and treble damages under N.C.G.S. § 75-16.

<u>**PUNITIVE DAMAGES**</u>

41. The allegations of paragraphs one through forty-one are incorporated by reference as if fully set forth herein.

42. The above acts of the defendant were willful and wanton and were performed in conscious disregard of, and with indifference to the rights of the plaintiff, and the defendant knew or should have known that its acts were reasonably likely to result in damages to the plaintiffs.

43. The plaintiffs are entitled to punitive damages against the defendant.

**WHEREFORE**, the plaintiffs make the following prayer for relief:

1. That the plaintiffs recover such sums in excess of $25,000.00 in actual and/or compensatory damages for defendant's breach of its insurance contract;

2. That any damages awarded be trebled under the provisions of N.C.G.S. § 75-16;

3. That the costs of this action, including a reasonable attorney's fees allowed by N.C.G.S. § 75-16.1 be awarded to plaintiffs;

4.   That, in the alternative, plaintiff be awarded punitive damages for defendants' willful and wanton actions;

5.   FOR A TRIAL BY JURY on all issues of fact so triable; and

6.   For such other and further relief as to the court may seem just and proper.

This the 23rd day of August, 2018.

_Stephanie W. Anderson_

Stephanie W. Anderson,
Attorney for plaintiffs

OF COUNSEL:

Burton, Sue & Anderson, L.L.P.
Post Office Box 20083
Greensboro, NC 27420
Telephone: (336) 275-0512
Facsimile: (336) 378-1390
1946PF08.23.18

# EXHIBIT "A"


**Allstate.**
You're in good hands.

Claim# 0437547078

To Whom It May Concern:

I, _____Jeremy LeBeau_____, employee of Allstate Insurance Company Irving, Texas,

do certify that the enclosed is a copy of policy and or declaration page for the above

claim number, showing the coverages that were on the policy at the time of loss

of 11/29/2016_____. The enclosed copy of policy and or declaration

page was printed and mailed through Allstate's Output Processing Center.

_____
Claim Support

State of Texas, County of Dallas

On this _____3rd_____ day of _____March_____ 2017, before me personally

appeared *Jeremy LeBeau* to me known to be the person who executed the

foregoing instrument and acknowledged that he/she executed the same as a free act

and deed.

PATRICIA TORRES
Notary Public, State of Texas
My Commission Expires
October 31, 2017

_____
Notary Public



You're in good hands.

Ridenhour Ins Agy
852 US Hwy 64W #101
Mocksville NC 27028

Information as of October 21, 2016
Policyholder(s)                    Page **1** of 2
**Brent and Jamie Cranford**
Policy number
968 280 082

Your Allstate agency is
**Ridenhour Ins Agy**
(336) 751-0669
SRidenhour@allstate.com

||||'|||'''||||||'|'||'|||'|||'''||'||'|'|||'|||'|''
BRENT AND JAMIE CRANFORD
PO BOX 368
COOLEEMEE NC 27014-0368

# We're confirming your policy change

Thank you for choosing Allstate to help protect what's important to you. I've enclosed documents that confirm the policy change(s) you requested. You'll find your coverage details listed on the enclosed amended policy declarations.

The following change(s) are effective as of 10/22/2016:

A change in insurance coverage.

Your premium for the current policy period has been decreased by a total of $188.30.

## How to contact us

Give me a call at (336) 751-0669 if you have any questions. It's my pleasure to keep you in good hands.

Sincerely,

Ridenhour Ins Agy
Your Allstate Agent

EA120-1



# Your Insurance Coverage Checklist

We're happy to have you as an Allstate customer! This checklist outlines what's in this package and provides answers to some basic questions, as well as any "next steps" you may need to take.

☐ **What's in this package?**
See the guide below for the documents that are included. *Next steps:* review your *Policy Declarations* to confirm you have the coverages, coverage limits, premiums and savings that you requested and expected. Read any *Endorsements* or *Important Notices* to learn about new policy changes, topics of special interest, as well as required communications. Keep all of these documents with your other important insurance papers.

☐ **Am I getting all the discounts I should?**
Confirm with your Allstate Agent that you're benefiting from all the discounts you're eligible to receive.

☐ **What about my bill?**
Unless you've already paid your premium in full, we'll send your bill separately. *Next steps:* please pay the minimum amount by the due date listed on it.

You can also pay your bill online at allstate.com or by calling 1-800-ALLSTATE (1-800-255-7828). Para español, llamar al 1-800-979-4285. If you're enrolled in the Allstate® Easy Pay Plan, we'll send you a statement detailing your payment withdrawal schedule.

☐ **What if I have questions?**
You can either contact your Allstate Agent or call us 24/7 at 1-800-ALLSTATE (1-800-255-7828) – para español, llamar al 1-800-979-4285 – with questions about your coverage, or to update your coverages, limits, or deductibles. Or visit us online at allstate.com.

# A guide to your amended package

  

**Proof of Insurance ID Cards**
Your insurance cards are legally required, so please keep them in your vehicle at all times.

**Policy Declarations\***
The Policy Declarations lists policy details, such as your specific drivers, vehicles and coverages.

**Insurance Made Simple**
Insurance seem complicated? Our online guides explain coverage terms and features:
www.allstate.com/madesimple
Espanol.allstate.com/facildeentender

**\* To make it easier to see where you may have gaps in your protection, we've highlighted any coverages you do not have in the Coverage Detail section in the enclosed Policy Declarations.**

065 010 032
161021A302585

# Thank you for choosing Allstate

![Allstate logo] **Allstate.**
You're in good hands.

## Proof of Insurance Card

For your convenience, two insurance cards have been included for each vehicle. State law requires that one of these cards be kept in each vehicle. Please place them in your vehicles by the effective date.



IDNC

---

**North Carolina**
**Proof of Insurance Card**

**Allstate.**
You're in good hands.

Allstate Property and Casualty Insurance Company
Brent and Jamie Cranford
PO Box 368
Cooleemee NC 27014-0368

POLICY NUMBER          YEAR / MAKE / MODEL
968 280 082            **1997 Chevy Trk S10-T10**
EFFECTIVE DATE         VEHICLE ID NUMBER
10/22/16               **1GCCT19W7V8163710**
EXPIRATION DATE
03/20/17

*This card should be carried in the vehicle at all times as evidence of insurance.*

---

**North Carolina**
**Proof of Insurance Card**

**Allstate.**
You're in good hands.

Allstate Property and Casualty Insurance Company
Brent and Jamie Cranford
PO Box 368
Cooleemee NC 27014-0368

POLICY NUMBER          YEAR / MAKE / MODEL
968 280 082            **1997 Chevy Trk S10-T10**
EFFECTIVE DATE         VEHICLE ID NUMBER
10/22/16               **1GCCT19W7V8163710**
EXPIRATION DATE
03/20/17

*This card should be carried in the vehicle at all times as evidence of insurance.*

---

**North Carolina**
**Proof of Insurance Card**

**Allstate.**
You're in good hands.

Allstate Property and Casualty Insurance Company
Brent and Jamie Cranford
PO Box 368
Cooleemee NC 27014-0368

POLICY NUMBER          YEAR / MAKE / MODEL
968 280 082            **2009 Honda Civic**
EFFECTIVE DATE         VEHICLE ID NUMBER
10/22/16               **19XFA16569E037302**
EXPIRATION DATE
03/20/17

*This card should be carried in the vehicle at all times as evidence of insurance.*

---

**North Carolina**
**Proof of Insurance Card**

**Allstate.**
You're in good hands.

Allstate Property and Casualty Insurance Company
Brent and Jamie Cranford
PO Box 368
Cooleemee NC 27014-0368

POLICY NUMBER          YEAR / MAKE / MODEL
968 280 082            **2009 Honda Civic**
EFFECTIVE DATE         VEHICLE ID NUMBER
10/22/16               **19XFA16569E037302**
EXPIRATION DATE
03/20/17

*This card should be carried in the vehicle at all times as evidence of insurance.*

---

**North Carolina**
**Proof of Insurance Card**

**Allstate.**
You're in good hands.

Allstate Property and Casualty Insurance Company
Brent and Jamie Cranford
PO Box 368
Cooleemee NC 27014-0368

POLICY NUMBER          YEAR / MAKE / MODEL
968 280 082            **2001 Jeep Wrangler**
EFFECTIVE DATE         VEHICLE ID NUMBER
10/22/16               **1J4FA49S81P331026**
EXPIRATION DATE
03/20/17

*This card should be carried in the vehicle at all times as evidence of insurance.*

---

**North Carolina**
**Proof of Insurance Card**

**Allstate.**
You're in good hands.

Allstate Property and Casualty Insurance Company
Brent and Jamie Cranford
PO Box 368
Cooleemee NC 27014-0368

POLICY NUMBER          YEAR / MAKE / MODEL
968 280 082            **2001 Jeep Wrangler**
EFFECTIVE DATE         VEHICLE ID NUMBER
10/22/16               **1J4FA49S81P331026**
EXPIRATION DATE
03/20/17

*This card should be carried in the vehicle at all times as evidence of insurance.*

---

**North Carolina**
**Proof of Insurance Card**

**Allstate.**
You're in good hands.

Allstate Property and Casualty Insurance Company
Brent and Jamie Cranford
PO Box 368
Cooleemee NC 27014-0368

POLICY NUMBER          YEAR / MAKE / MODEL
968 280 082            **2005 Ford Five Hundred**
EFFECTIVE DATE         VEHICLE ID NUMBER
10/22/16               **1FAFP27185G117281**
EXPIRATION DATE
03/20/17

*This card should be carried in the vehicle at all times as evidence of insurance.*

---

**North Carolina**
**Proof of Insurance Card**

**Allstate.**
You're in good hands.

Allstate Property and Casualty Insurance Company
Brent and Jamie Cranford
PO Box 368
Cooleemee NC 27014-0368

POLICY NUMBER          YEAR / MAKE / MODEL
968 280 082            **2005 Ford Five Hundred**
EFFECTIVE DATE         VEHICLE ID NUMBER
10/22/16               **1FAFP27185G117281**
EXPIRATION DATE
03/20/17

*This card should be carried in the vehicle at all times as evidence of insurance.*

**If you have an accident or loss:**
- Get medical attention if needed.
- Notify the police immediately.
- Obtain names, addresses, phone numbers (work & home) and license plate numbers of all persons involved, including passengers and witnesses.
- Call 1-800-ALLSTATE (1-800-255-7828), logon to allstate.com or contact your Allstate agent as soon as possible.

    Ridenhour Ins Agy
    (336) 751-0669
    852 US Hwy 64W #101
    Mocksville, NC 27028

**If you have an accident or loss:**
- Get medical attention if needed.
- Notify the police immediately.
- Obtain names, addresses, phone numbers (work & home) and license plate numbers of all persons involved, including passengers and witnesses.
- Call 1-800-ALLSTATE (1-800-255-7828), logon to allstate.com or contact your Allstate agent as soon as possible.

    Ridenhour Ins Agy
    (336) 751-0669
    852 US Hwy 64W #101
    Mocksville, NC 27028

**If you have an accident or loss:**
- Get medical attention if needed.
- Notify the police immediately.
- Obtain names, addresses, phone numbers (work & home) and license plate numbers of all persons involved, including passengers and witnesses.
- Call 1-800-ALLSTATE (1-800-255-7828), logon to allstate.com or contact your Allstate agent as soon as possible.

    Ridenhour Ins Agy
    (336) 751-0669
    852 US Hwy 64W #101
    Mocksville, NC 27028

**If you have an accident or loss:**
- Get medical attention if needed.
- Notify the police immediately.
- Obtain names, addresses, phone numbers (work & home) and license plate numbers of all persons involved, including passengers and witnesses.
- Call 1-800-ALLSTATE (1-800-255-7828), logon to allstate.com or contact your Allstate agent as soon as possible.

    Ridenhour Ins Agy
    (336) 751-0669
    852 US Hwy 64W #101
    Mocksville, NC 27028

**If you have an accident or loss:**
- Get medical attention if needed.
- Notify the police immediately.
- Obtain names, addresses, phone numbers (work & home) and license plate numbers of all persons involved, including passengers and witnesses.
- Call 1-800-ALLSTATE (1-800-255-7828), logon to allstate.com or contact your Allstate agent as soon as possible.

    Ridenhour Ins Agy
    (336) 751-0669
    852 US Hwy 64W #101
    Mocksville, NC 27028

**If you have an accident or loss:**
- Get medical attention if needed.
- Notify the police immediately.
- Obtain names, addresses, phone numbers (work & home) and license plate numbers of all persons involved, including passengers and witnesses.
- Call 1-800-ALLSTATE (1-800-255-7828), logon to allstate.com or contact your Allstate agent as soon as possible.

    Ridenhour Ins Agy
    (336) 751-0669
    852 US Hwy 64W #101
    Mocksville, NC 27028

**If you have an accident or loss:**
- Get medical attention if needed.
- Notify the police immediately.
- Obtain names, addresses, phone numbers (work & home) and license plate numbers of all persons involved, including passengers and witnesses.
- Call 1-800-ALLSTATE (1-800-255-7828), logon to allstate.com or contact your Allstate agent as soon as possible.

    Ridenhour Ins Agy
    (336) 751-0669
    852 US Hwy 64W #101
    Mocksville, NC 27028

**If you have an accident or loss:**
- Get medical attention if needed.
- Notify the police immediately.
- Obtain names, addresses, phone numbers (work & home) and license plate numbers of all persons involved, including passengers and witnesses.
- Call 1-800-ALLSTATE (1-800-255-7828), logon to allstate.com or contact your Allstate agent as soon as possible.

    Ridenhour Ins Agy
    (336) 751-0669
    852 US Hwy 64W #101
    Mocksville, NC 27028

Policy number: 968 280 082
Policy effective date: September 20, 2016


You're in good hands.

## Proof of Insurance Card

For your convenience, two insurance cards have been included for each vehicle. State law requires that one of these cards be kept in each vehicle. Please place them in your vehicles by the effective date.



IDNC

Allstate
You're in good hands.

*Please use the printed Insurance Cards below.*

Allstate
You're in good hands.

*Please use the printed Insurance Cards below.*

Allstate
You're in good hands.

*Please use the printed Insurance Cards below.*

Allstate
You're in good hands.

*Please use the printed Insurance Cards below.*

---

North Carolina
Proof of Insurance Card — Allstate. You're in good hands.

Allstate Property and Casualty Insurance Company
Brent and Jamie Cranford
PO Box 368
Cooleemee NC 27014-0368

| POLICY NUMBER | YEAR / MAKE / MODEL |
|---|---|
| 968 280 082 | **2004 Ford Mustang** |
| EFFECTIVE DATE | VEHICLE ID NUMBER |
| 10/22/16 | **1FAFP40674F206068** |
| EXPIRATION DATE | |
| 03/20/17 | |

*This card should be carried in the vehicle at all times as evidence of insurance.*

---

North Carolina
Proof of Insurance Card — Allstate. You're in good hands.

Allstate Property and Casualty Insurance Company
Brent and Jamie Cranford
PO Box 368
Cooleemee NC 27014-0368

| POLICY NUMBER | YEAR / MAKE / MODEL |
|---|---|
| 968 280 082 | **2004 Ford Mustang** |
| EFFECTIVE DATE | VEHICLE ID NUMBER |
| 10/22/16 | **1FAFP40674F206068** |
| EXPIRATION DATE | |
| 03/20/17 | |

*This card should be carried in the vehicle at all times as evidence of insurance.*

---

North Carolina
Proof of Insurance Card — Allstate. You're in good hands.

Allstate Property and Casualty Insurance Company
Brent and Jamie Cranford
PO Box 368
Cooleemee NC 27014-0368

| POLICY NUMBER | YEAR / MAKE / MODEL |
|---|---|
| 968 280 082 | **1992 Chevy Trk S10** |
| EFFECTIVE DATE | VEHICLE ID NUMBER |
| 10/22/16 | **1GCCS14R5N8225559** |
| EXPIRATION DATE | |
| 03/20/17 | |

*This card should be carried in the vehicle at all times as evidence of insurance.*

---

North Carolina
Proof of Insurance Card — Allstate. You're in good hands.

Allstate Property and Casualty Insurance Company
Brent and Jamie Cranford
PO Box 368
Cooleemee NC 27014-0368

| POLICY NUMBER | YEAR / MAKE / MODEL |
|---|---|
| 968 280 082 | **1992 Chevy Trk S10** |
| EFFECTIVE DATE | VEHICLE ID NUMBER |
| 10/22/16 | **1GCCS14R5N8225559** |
| EXPIRATION DATE | |
| 03/20/17 | |

*This card should be carried in the vehicle at all times as evidence of insurance.*

*Please use the printed Insurance Cards below.*

*Please use the printed Insurance Cards below.*

*Please use the printed Insurance Cards below.*

*Please use the printed Insurance Cards below.*

**If you have an accident or loss:**
- Get medical attention if needed.
- Notify the police immediately.
- Obtain names, addresses, phone numbers (work & home) and license plate numbers of all persons involved, including passengers and witnesses.
- Call 1-800-ALLSTATE (1-800-255-7828), logon to allstate.com or contact your Allstate agent as soon as possible.

Ridenhour Ins Agy
(336) 751-0669
852 US Hwy 64W #101
Mocksville, NC 27028

**If you have an accident or loss:**
- Get medical attention if needed.
- Notify the police immediately.
- Obtain names, addresses, phone numbers (work & home) and license plate numbers of all persons involved, including passengers and witnesses.
- Call 1-800-ALLSTATE (1-800-255-7828), logon to allstate.com or contact your Allstate agent as soon as possible.

Ridenhour Ins Agy
(336) 751-0669
852 US Hwy 64W #101
Mocksville, NC 27028

**If you have an accident or loss:**
- Get medical attention if needed.
- Notify the police immediately.
- Obtain names, addresses, phone numbers (work & home) and license plate numbers of all persons involved, including passengers and witnesses.
- Call 1-800-ALLSTATE (1-800-255-7828), logon to allstate.com or contact your Allstate agent as soon as possible.

Ridenhour Ins Agy
(336) 751-0669
852 US Hwy 64W #101
Mocksville, NC 27028

**If you have an accident or loss:**
- Get medical attention if needed.
- Notify the police immediately.
- Obtain names, addresses, phone numbers (work & home) and license plate numbers of all persons involved, including passengers and witnesses.
- Call 1-800-ALLSTATE (1-800-255-7828), logon to allstate.com or contact your Allstate agent as soon as possible.

Ridenhour Ins Agy
(336) 751-0669
852 US Hwy 64W #101
Mocksville, NC 27028

065 010 032
160121A302585
1100000A302585065NC000160121354140030560030080018543

# Amended auto policy declarations

Your policy effective date is September 20, 2016



You're in good hands.

Information as of October 21, 2016

## Total Premium for the Policy Period

Please review your insured vehicles and verify their VINs are correct.

| Vehicles covered | Identification Number (VIN) | Premium |
|---|---|---|
| 1992 Chevy Trk S10 | 1GCCS14R5N8225559 | $852.31 |
| 2004 Ford Mustang | 1FAFP40674F206068 | 499.30 |
| 2005 Ford Five Hundred | 1FAFP27185G117281 | 383.30 |
| 2001 Jeep Wrangler | 1J4FA49S81P331026 | 393.30 |
| 2009 Honda Civic | 19XFA16569E037302 | 535.30 |
| 1997 Chevy Trk S10-T10 | 1GCCT19W7V8163710 | 168.30 |
| Additional coverages | | 67.00 |
| **Total*** | | **$2,898.81** |

*If you pay less than the Pay in Full amount, you will be charged an installment fee(s).

## Discounts (included in your total premium)

| | |
|---|---|
| Multiple Car | Antilock Brakes |
| Good Payer | Passive Restraint |

### Discounts per vehicle

**1992 Chevy Trk S10**

Multiple Car

**2004 Ford Mustang**

| | |
|---|---|
| Multiple Car | Antilock Brakes |
| Good Payer | Passive Restraint |

**2005 Ford Five Hundred**

| | |
|---|---|
| Multiple Car | Antilock Brakes |
| Good Payer | Passive Restraint |

**2001 Jeep Wrangler**

| | |
|---|---|
| Multiple Car | Antilock Brakes |
| Good Payer | Passive Restraint |

**2009 Honda Civic**

| | |
|---|---|
| Multiple Car | Antilock Brakes |
| Good Payer | Passive Restraint |

**1997 Chevy Trk S10-T10**

| | |
|---|---|
| Multiple Car | Passive Restraint |

## Surcharge (included in your total premium)

Inexperienced Operator
- 1992 Chevy Trk S10

## Summary

Named Insured(s)
**Brent and Jamie Cranford**

Mailing address
**PO Box 368**
**Cooleemee NC 27014-0368**

Policy number
**968 280 082**

Your policy provided by
**Allstate Property and Casualty Insurance Company**

Policy period
Beginning **September 20, 2016** through
**March 20, 2017** at 12:01 a.m. standard
time

Your policy changes are effective
**October 22, 2016**

Your Allstate agency is
**Ridenhour Ins Agy**
852 US Hwy 64W #101
Mocksville NC 27028
(336) 751-0669
SRidenhour@allstate.com

**Some or all of the information on your
Policy Declarations is used in the rating
of your policy or it could affect your
eligibility for certain coverages. Please
notify us immediately if you believe that
any information on your Policy
Declarations is incorrect. We will make
corrections once you have notified us,
and any resulting rate adjustments, will
be made only for the current policy
period or for future policy periods.
Please also notify us immediately if you
believe any coverages are not listed or
are inaccurately listed.**

NC010AMD



Amended auto policy declarations
Policy number: **968 280 082**
Policy effective date: September 20, 2016

Page **2** of 6

### Listed drivers on your policy

**Brent Cranford**
**Jamie Cranford**
**Anna Cranford**
**Carlton Cranford**

### Excluded drivers from your policy

None

## Coverage detail for 1992 Chevy Trk S10

| Coverage | Limits | Deductible | Premium |
|---|---|---|---|
| Automobile Liability Insurance | | | |
| Bodily Injury | $100,000 each person<br>$300,000 each occurrence | Not applicable | $441.91 |
| Property Damage | $100,000 each occurrence | Not applicable | $350.40 |
| (1) Comprehensive - Excluding Collision | Not purchased* | | |
| (2) Personal Effects | | | |
| Auto Collision Insurance | Not purchased* | | |
| Rental Reimbursement | Not purchased* | | |
| Towing and Labor Costs | Not purchased* | | |
| Transportation Expenses | Not purchased* | | |
| Audio, Visual, and Data Electronic Equipment | Not purchased* | | |
| Automobile Medical Payments | $1,000 each person | Not applicable | $60.00 |
| Customizing Equipment | Not purchased* | | |
| **Total premium for 1992 Chevy Trk S10** | | | **$852.31** |

***This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your Allstate agent to discuss coverage options and other products and services that can help protect you.**

**VIN** 1GCCS14R5N8225559

**Rating information**
- Owns residence
- This vehicle is driven over 7,500 miles per year, for pleasure, unmarried male age 16, good driver rate

065 010 032
16102IA302585

Amended auto policy declarations
Policy number: **968 280 082**
Policy effective date: September 20, 2016

Page **3** of 6



**Allstate.**
You're in good hands.

## Coverage detail for 2004 Ford Mustang

| Coverage | Limits | Deductible | Premium |
|---|---|---|---|
| Automobile Liability Insurance | | | |
| Bodily Injury | $100,000 each person<br>$300,000 each occurrence | Not applicable | $93.40 |
| Property Damage | $100,000 each occurrence | Not applicable | $74.90 |
| (1) Comprehensive - Excluding Collision | Actual cash value | $0 | $140.00 |
| (2) Personal Effects | $100 | $0 | |
| Auto Collision Insurance | Actual cash value | $1,000 | $179.00 |
| Rental Reimbursement | **Not purchased\*** | | |
| Towing and Labor Costs | $100 each disablement | Not applicable | $3.00 |
| Transportation Expenses | **Not purchased\*** | | |
| Audio, Visual, and Data Electronic Equipment | **Not purchased\*** | | |
| Automobile Medical Payments | $1,000 each person | Not applicable | $9.00 |
| Customizing Equipment | **Not purchased\*** | | |
| **Total premium for 2004 Ford Mustang** | | | **$499.30** |

*\* This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your Allstate agent to discuss coverage options and other products and services that can help protect you.*

**VIN** 1FAFP40674F206068

**Rating information**
- Owns residence
- This vehicle is driven over 7,500 miles per year, 10 - 20 miles to work/school, married driver age 51, good driver rate

## Coverage detail for 2005 Ford Five Hundred

| Coverage | Limits | Deductible | Premium |
|---|---|---|---|
| Automobile Liability Insurance | | | |
| Bodily Injury | $100,000 each person<br>$300,000 each occurrence | Not applicable | $87.90 |
| Property Damage | $100,000 each occurrence | Not applicable | $70.90 |
| (1) Comprehensive - Excluding Collision | Actual cash value | $0 | $77.00 |
| (2) Personal Effects | $100 | $0 | |
| Auto Collision Insurance | Actual cash value | $1,000 | $136.00 |
| Rental Reimbursement | **Not purchased\*** | | |
| Towing and Labor Costs | $100 each disablement | Not applicable | $3.00 |
| Transportation Expenses | **Not purchased\*** | | |

*(continued)*

NC010AMD



Amended auto policy declarations
Policy number: 968 280 082
Policy effective date: September 20, 2016

Page **4** of 6

| Coverage | Limits | Deductible | Premium |
|---|---|---|---|
| Audio, Visual, and Data Electronic Equipment | Not purchased* | | |
| Automobile Medical Payments | $1,000 each person | Not applicable | $8.50 |
| Customizing Equipment | Not purchased* | | |
| **Total premium for 2005 Ford Five Hundred** | | | **$383.30** |

*** This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your Allstate agent to discuss coverage options and other products and services that can help protect you.**

**VIN** 1FAFP27185G117281

**Rating information**
- Owns residence

## Coverage detail for 2001 Jeep Wrangler

| Coverage | Limits | Deductible | Premium |
|---|---|---|---|
| Automobile Liability Insurance | | | |
| Bodily Injury | $100,000 each person $300,000 each occurrence | Not applicable | $87.90 |
| Property Damage | $100,000 each occurrence | Not applicable | $70.90 |
| (1) Comprehensive - Excluding Collision | Actual cash value | $0 | $82.00 |
| (2) Personal Effects | $100 | $0 | |
| Auto Collision Insurance | Actual cash value | $1,000 | $144.00 |
| Rental Reimbursement | Not purchased* | | |
| Towing and Labor Costs | Not purchased* | | |
| Transportation Expenses | Not purchased* | | |
| Audio, Visual, and Data Electronic Equipment | Not purchased* | | |
| Automobile Medical Payments | $1,000 each person | Not applicable | $8.50 |
| Customizing Equipment | Not purchased* | | |
| **Total premium for 2001 Jeep Wrangler** | | | **$393.30** |

*** This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your Allstate agent to discuss coverage options and other products and services that can help protect you.**

**VIN** 1J4FA49S81P331026

**Rating information**
- Owns residence
- This vehicle is driven over 7,500 miles per year, for pleasure, married male age 44, good driver rate

06S 010 032
161021A302585

Amended auto policy declarations
Policy number: 968 280 082
Policy effective date: September 20, 2016

Page **5** of 6



**Allstate**

You're in good hands.

## Coverage detail for 2009 Honda Civic

| Coverage | Limits | Deductible | Premium |
|---|---|---|---|
| Automobile Liability Insurance | | | |
| Bodily Injury | $100,000 each person<br>$300,000 each occurrence | Not applicable | $95.90 |
| Property Damage | $100,000 each occurrence | Not applicable | $75.40 |
| (1) Comprehensive - Excluding Collision | Actual cash value | $0 | $122.00 |
| (2) Personal Effects | $100 | $0 | |
| Auto Collision Insurance | Actual cash value | $1,000 | $230.00 |
| Rental Reimbursement | **Not purchased*** | | |
| Towing and Labor Costs | $100 each disablement | Not applicable | $3.00 |
| Transportation Expenses | **Not purchased*** | | |
| Audio, Visual, and Data Electronic Equipment | **Not purchased*** | | |
| Automobile Medical Payments | $1,000 each person | Not applicable | $9.00 |
| Customizing Equipment | **Not purchased*** | | |
| **Total premium for 2009 Honda Civic** | | | **$535.30** |

*** This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your Allstate agent to discuss coverage options and other products and services that can help protect you.**

**VIN** 19XFA16569E037302

**Rating information**
- Owns residence

## Coverage detail for 1997 Chevy Trk S10-T10

| Coverage | Limits | Deductible | Premium |
|---|---|---|---|
| Automobile Liability Insurance | | | |
| Bodily Injury | $100,000 each person<br>$300,000 each occurrence | Not applicable | $87.90 |
| Property Damage | $100,000 each occurrence | Not applicable | $70.90 |
| (1) Comprehensive - Excluding Collision | **Not purchased*** | | |
| (2) Personal Effects | | | |
| Auto Collision Insurance | **Not purchased*** | | |
| Rental Reimbursement | **Not purchased*** | | |
| Towing and Labor Costs | **Not purchased*** | | |
| Transportation Expenses | **Not purchased*** | | |
| Audio, Visual, and Data Electronic Equipment | **Not purchased*** | | |

*(continued)*

NCO10AMD



Policy number: 968 280 082
Policy effective date: September 20, 2016

| Coverage | Limits | Deductible | Premium |
|---|---|---|---|
| Automobile Medical Payments | $1,000 each person | Not applicable | $9.50 |
| Customizing Equipment | **Not purchased*** | | |
| **Total premium for 1997 Chevy Trk S10-T10** | | | **$168.30** |

*\* This coverage can provide you with valuable protection.  To help you stay current with your insurance needs, contact your Allstate agent to discuss coverage options and other products and services that can help protect you.*

**VIN** 1GCCT19W7V8163710

**Rating information**
- Owns residence
- This vehicle is driven over 7,500 miles per year, for pleasure, unmarried female age 19, good driver rate

## Additional coverage

The following policy coverage is also provided.

| Coverage | Limits | Deductible | Premium |
|---|---|---|---|
| Uninsured / Underinsured Motorists | | | $67.00 |
| Bodily Injury | $100,000 each person $300,000 each accident | Not applicable | |
| Property Damage (Uninsured Motorists Only) | $50,000 each accident | $100 | |
| Automobile Disability Income Protection | **Not purchased*** | | |
| **Total** | | | **$67.00** |

*\* This coverage can provide you with valuable protection.  To help you stay current with your insurance needs, contact your Allstate agent to discuss coverage options and other products and services that can help protect you.*

## Your policy documents

Your automobile policy consists of this Policy Declarations and the documents in the following list. Please keep these together.
- Allstate Property and Casualty North Carolina Auto Policy – AU12991
- North Carolina Amendatory Endorsement – AU14301-4

**Allstate Property and Casualty Insurance Company's** Secretary and President have signed this policy with legal authority at Northbrook, Illinois.

*Steven P. Sorenson*
Steven P. Sorenson
President

*Susan L. Lees*
Susan L. Lees
Secretary

065 010 032
161021A302585

# EXHIBIT "B"



## AUTOMOBILE POLICY PACKET

DAVID W HARRELSON
400 JERUSALEM RD
LEXINGTON NC 27292-8658

GIC 02953 49 91 7102 4

POLICY PERIOD: EFFECTIVE OCT 05 2016 TO APR 05 2017

# IMPORTANT MESSAGES

Refer to your Declarations Page and endorsements to verify that coverages, limits, deductibles and other policy details are correct and meet your insurance needs. Required information forms are also enclosed for your review.

Check your vehicle for a safety recall today! Visit www.usaa.com/autorecall to learn more.

In the repair of your covered auto under the Physical Damage Coverage provisions of this policy, we may require or specify the use of automobile parts not made by the original manufacturer. These parts are required to be at least equal in terms of fit, quality, performance and warranty to the original manufacturer parts they replace.

With this renewal, your premium has increased due to a rate change in your state or because of your policy's individual risk characteristics. See your Declarations for the new premium. Contact us if you have any questions.

Thank you for renewing your policy and allowing us to continue servicing your insurance needs. If you have any concerns or need to modify or cancel the renewal policy, please contact us immediately.

TEXTING & DRIVING ... It Can Wait! Join USAA in the movement against distracted driving by going to http://itcanwait.usaa.com to watch powerful videos and take the pledge to not text and drive!

USAA considers many factors when determining your premium. Maintaining safe driving habits is one of the most important steps you can take in keeping your premium as low as possible. A history of claim or driving activity and your USAA payment history may affect your policy premium.

This is not a bill. Any premium charge or change for this policy will be reflected on your next regular monthly statement. Your current billing statement should still be paid by the due date indicated.

**To receive this document and others electronically, or manage your Auto Policy online, go to usaa.com.**

For U.S. calls: Policy Service (800) 531-8111. Claims (800) 531-8222.

ACS1

49708-0406

THIS PAGE INTENTIONALLY LEFT BLANK

# AUTOMOBILE POLICY PACKET CONTINUED

We have provided your ID cards in this packet.  You can use the cards
to show proof of insurance, if necessary.

ACS2

07/27/16

## Automobile Insurance Identification Card

We've issued an identification card as evidence of liability insurance for your vehicle(s). This card is valid only as long as liability insurance remains in force.

You may be required to produce your identification card at vehicle registration or inspection, when applying for a driver's license, following an accident or upon a law enforcement officer's request.

**Keep a copy of the ID card in your vehicle at all times.**

For your convenience, additional copies are available on usaa.com.

53NC2 Rev. 6-13                                                               55067-0513__01

---

USAA GENERAL INDEMNITY COMPANY

NORTH CAROLINA INSURANCE IDENTIFICATION CARD

NAME    SHERI Y HARRELSON
        CARLTON P CRANFORD

POLICY NUMBER
        02953 49 91G  7102    4

EFFECTIVE              TO
DATE    10/05/16          04/05/17

2002 NISSAN          5N1MD28Y32C601962

9800 Fredericksburg Road      San Antonio, Texas 78288

Additional copies available at **usaa.com**

**CONTACT US: 210-531-USAA(8722)**
OR 800-531-USAA

---

USAA GENERAL INDEMNITY COMPANY

NORTH CAROLINA INSURANCE IDENTIFICATION CARD

NAME    DAVID W HARRELSON
        SHERI Y HARRELSON

POLICY NUMBER
        02953 49 91G  7102    4

EFFECTIVE              TO
DATE    10/05/16          04/05/17

2013 HYUNDAI         5NPEB4AC2DH678189

9800 Fredericksburg Road      San Antonio, Texas 78288

Additional copies available at **usaa.com**

**CONTACT US: 210-531-USAA(8722)**
OR 800-531-USAA



USAA GENERAL INDEMNITY COMPANY

(A Stock Insurance Company)

USAA® 9800 Fredericksburg · San Antonio, Texas 78288

THE EASY READING AUTO POLICY
RENEWAL DECLARATIONS
(ATTACH TO PREVIOUS POLICY)

Named Insured and Address

| State | 03 ,06 | | Veh | POLICY NUMBER |
|-------|--------|--|-----|---------------|
| NC | 360360 | | Terr | 02953 49 91G 7102 4 |

POLICY PERIOD:          (12:01 A.M. standard time)
EFFECTIVE OCT 05 2016 TO APR 05 2017

OPERATORS
01 DAVID W HARRELSON
02 SHERI Y HARRELSON
04 CARLTON P CRANFORD

DAVID W HARRELSON
400 JERUSALEM RD
LEXINGTON NC 27292-8658

Description of Vehicle(s)

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | VEH USE* SYM | WORK/SCH Miles One Way | Days Per Week |
|-----|------|-----------|-------|-----------|----------------|----------------------|-----|------|------|
| 03 | 02 | NISSAN | XTERRA | 4 DOOR | 6000 | 5N1MD28Y32C601962 | W | 05 | 5 |
| 06 | 13 | HYUNDAI | SONATA | 4 DOOR | 13500 | 5NPEB4AC2DH678189 | W | 07 | 5 |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. *W/C=Work/School; B=Business; F=Farm; P=Pleasure

VEH 03   LEXINGTON NC 27292-8658
VEH 06   LEXINGTON NC 27292-8658

**This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.**

| COVERAGES          LIMITS OF LIABILITY ("ACV" MEANS ACTUAL CASH VALUE) | VEH 03  6-MONTH D=DED AMOUNT | PREMIUM $ | VEH 06  6-MONTH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ |
|---|---|---|---|---|---|---|---|---|
| PART A - LIABILITY | | | | | | | | |
| BODILY INJURY    EA PER $   50,000 | | | | | | | | |
|                  EA ACC $  100,000 | | 80.97 | | 80.97 | | | | |
| PROPERTY DAMAGE EA ACC $   50,000 | | 62.48 | | 62.47 | | | | |
| PART B - MEDICAL PAYMENTS | | | | | | | | |
|                  EA PER $    2,000 | | 13.76 | | 13.76 | | | | |
| PART C - UM/UIM | | | | | | | | |
| BODILY INJURY    EA PER $   50,000 | | | | | | | | |
|                  EA ACC $  100,000 | SEE UM/UIM POLICY PREMIUM BELOW | | | | | | | |
| PROPERTY DAMAGE EA ACC $   50,000 | SEE UMPD POLICY PREMIUM BELOW | | | | | | | |
| PART D - DAMAGE TO YOUR AUTO | | | | | | | | |
| OTHER THAN COLL LOSS   ACV LESS | | | D 500 | 47.00 | | | | |
| COLLISION LOSS         ACV LESS | | | D 500 | 181.00 | | | | |
| OTHER COVERAGES | | | | | | | | |
| TOWING AND LABOR | | 2.00 | | 2.00 | | | | |
| LEARNERS PERMIT OP 04 | | | | | | | | |
| VEHICLE TOTAL PREMIUM | | 159.21 | | 387.20 | | | | |

UM/UIM POLICY PREMIUM $  29.50

TOTAL PREMIUM - SEE FOLLOWING PAGE(S)

ENDORSEMENTS: ADDED 10-05-16 -  5013NC(04)
REMAIN IN EFFECT(REFER TO PREVIOUS POLICY)-  5000NC(07)  5301NC(02)  5303NC(04)
  5307NC(03)  5315NC(01)  5350NC(01)
INFORMATION FORMS:  999NC(31)
1

| 03| RMM250 0000 | | | | | | | 06| RMF250 0000 | | | | | | V H | | | | | | | V H | | |

IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas, on this date JULY 27, 2016

*Deneen Donnley*
Deneen Donnley, Secretary

*Alan W. Krapf*
Alan W. Krapf, President

000 G 05-12
3384-05-12



USAA GENERAL INDEM Y COMPANY

(A Stock Insurance Company)

USAA® 9800 Fredericksburg - San Antonio, Texas 78288

THE EASY READING AUTO POLICY
RENEWAL DECLARATIONS
(ATTACH TO PREVIOUS POLICY)

| State | | | | Veh | POLICY NUMBER |
|---|---|---|---|---|---|
| NC | | | | Terr | 02953 49 91G 7102 4 |

POLICY PERIOD: (12:01 A.M. standard time)
**EFFECTIVE OCT 05 2016 TO APR 05 2017**

**Named Insured and Address**

DAVID W HARRELSON
400 JERUSALEM RD
LEXINGTON NC 27292-8658

**Description of Vehicle(s)**

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | SYM | VEH USE* | WORK/SCHO Miles One Way | Days Per Week |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. * W/C=Work/School; B=Business; F=Farm; P=Pleasure

---

This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.

| COVERAGES LIMITS OF LIABILITY ("ACV" MEANS ACTUAL CASH VALUE) | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ |
|---|---|---|---|---|---|---|---|---|
| UMPD POLICY PREMIUM $ 3.50 | | | | | | | | |

6 MONTH PREMIUM $ 579.41
PREMIUM DUE AT INCEPTION. THIS IS NOT A BILL, STATEMENT TO FOLLOW.

THE FOLLOWING COVERAGE(S) DEFINED IN THIS POLICY ARE NOT PROVIDED FOR:
VEH 03 - DAMAGE TO YOUR AUTO OTHER THAN COLLISION, COLLISION

---

In WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas, on this date JULY 27, 2016

Deneen Donnley, Secretary          Alan W. Krapf, Presiden

000 G 05-12

**USAA**®

### SUPPLEMENTAL INFORMATION

**EFFECTIVE OCT 05 2016 TO APR 05 2017**

The following approximate premium discounts or credits have already been applied to reduce your policy premium costs.

NOTE: Age or **senior citizen** status, if allowed by your state/location, was taken into consideration when your rates were set and your premiums have already been adjusted.

```
VEHICLE 03
    MULTI-CAR DISCOUNT                    -$    74.93
    PASSIVE RESTRAINT DISCOUNT            -$     5.90

VEHICLE 06
    MULTI-CAR DISCOUNT                    -$   147.24
    PASSIVE RESTRAINT DISCOUNT            -$     5.90
```

SUPDECCW Rev. 7-95                    JULY 27, 2016

## Amendatory Endorsement

This endorsement is a part of your policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement.

### 1. DEFINITIONS

A. The definition of "newly acquired auto" is amended as follows:

"Newly acquired auto" means any of the following types of vehicles you become the owner of during the policy period:

1. a private passenger auto or station wagon type; or

2. a pickup truck or van that:

   a. has a Gross Vehicle Weight as specified by the manufacturer of less than 14,000 pounds; and

   b. is not used for the delivery or transportation of goods and materials unless such use is:

      (1) incidental to your business of installing, maintaining or repairing furnishings or equipment; or

      (2) for farming or ranching.

Any coverage for a newly acquired auto is subject to the following:

1. If a newly acquired auto replaces a vehicle shown in the Declarations, it will have the same coverage as the vehicle it replaced except that coverage, if any, under Part D – Coverage For Damage To Your Auto applies only if you ask us to insure it within 30 days after you become the owner.

2. If a newly acquired auto is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations if you ask us to insure it within 30 days after you become the owner.

3. Coverage under this policy terminates for any newly acquired auto on the effective date and time of a policy (other than this policy) issued by us or any other company that describes such vehicle on its declarations page.

4. If you ask us to insure a newly acquired auto within the applicable specified time period described in 1. or 2. above, any coverage we provide for the newly acquired auto begins on the date you become the owner. If you ask us to insure a newly acquired auto after the applicable specified time period described above has elapsed, any coverage we provide for the newly acquired auto will begin at the time you request the coverage. You must pay us for any added amount due for any coverage we provide for a newly acquired auto.

B. The definition of "transportation network platform" is added:

"Transportation network platform" means an online–enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

Copyright, North Carolina Rate Bureau, 2016

Case 1:18-cv-00862-TDS-JLW   Document 3   Filed 10/11/18   Page 32 of 113

2.  **PART A - LIABILITY COVERAGE**

A.  Part A is amended as follows:

1.  Exclusion A.2. is deleted and replaced by the following:

We do not provide Liability Coverage for any **insured**:

2.  For **property damage** to property:

a.  owned in whole or in part by that **insured**; or

b.  being transported by that **insured**;

2.  Exclusion A.5 is deleted and replaced by the following:

We do not provide Liability Coverage for any **insured**:

5.  For that **insured's** liability arising out of the ownership or operation of a vehicle while it is being used as a public livery or conveyance. This includes but is not limited to any period of time that **insured** is logged into a **transportation network platform** as a driver, whether or not a passenger is **occupying** the vehicle.

This exclusion does not apply to a share-the-expense car pool.

3.  The following Exclusion B.3. is added:

We do not provide Liability Coverage for the ownership, maintenance or use of:

3.  Any vehicle while participating in any prearranged, organized, or spontaneous:

a.  racing contest, speed contest, demolition, stunt activity, or competitive driving event, or in practice or preparation for any such contest or use of this type; or

b.  use of a vehicle at a facility designed for racing or high performance driving unless such use is for an activity other than high performance driving, high speed driving, and other than those activities listed in 3.a. above.

This exclusion applies only to the extent that the limit of liability of this policy exceeds the minimum limit required by the financial responsibility law of North Carolina.

B.  The following provision is added following the **Other Insurance** provision:

**Appraisal - Diminution in Value**

If there is no dispute between the claimant and us regarding the **insured's** liability for the property damage to the claimant's vehicle, but:

a.  the claimant and we fail to agree as to the difference in fair market value of the vehicle immediately before the accident and immediately after the accident; and

b.  the difference in the claimant's and our estimate of the diminution in fair market value is greater than two thousand dollars ($2,000) or twenty-five percent (25%) of the fair market retail value of the vehicle

Copyright, North Carolina Rate Bureau, 2016

5013NC(04) Rev. 04-16

Page 2 of 7

prior to the accident as determined by the latest edition of the National Automobile Dealers Association Pricing Guide Book or other publications approved by the Commissioner of Insurance, whichever is less; then

on the written demand of either the claimant or us, the dispute regarding the amount of the diminution in value shall be determined by appraisal in accordance with G.S. 20-279.21(d1).

### 3. Part B - MEDICAL PAYMENTS COVERAGE

Exclusion 1. is deleted and replaced by the following:

We do not provide Medical Payments Coverage for any **insured** for **bodily injury**:

1. Sustained while **occupying your covered auto** when it is being used as a public or livery conveyance. This includes but is not limited to any period of time that **insured** is logged into a **transportation network platform** as a driver, whether or not a passenger is **occupying** the vehicle.

    This exclusion does not apply to a share-the-expense car pool.

The following Exclusion 12. is added:

We do not provide Medical Payments Coverage for any **insured** for **bodily injury**:

12. Sustained while **occupying** any vehicle participating in any prearranged, organized, or spontaneous:

    a. racing contest, speed contest, demolition, stunt activity, or competitive driving event, or in

practice or preparation for any such contest or use of this type; or

b. use of a vehicle at a facility designed for racing or high performance driving unless such use is for an activity other than high performance driving, high speed driving, and other than those activities listed in 12.a. above.

### 4. Part C1 - UNINSURED MOTORISTS COVERAGE

A. Part C1 is amended as follows:

A. Exclusion A.2. is deleted and replaced by the following:

We do not provide Uninsured Motorists Coverage for **property damage** or **bodily injury** sustained by any **insured**:

2. While **occupying your covered auto** when it is being used as a public or livery conveyance. This includes but is not limited to any period of time that **insured** is logged into a **transportation network platform** as a driver, whether or not a passenger is **occupying** the vehicle.

    This exclusion does not apply to a share-the-expense car pool.

B. The third paragraph of **Limit of Liability** is deleted and replaced by the following:

The limits of bodily injury liability shown in the Declarations for each person and each accident for this coverage shall be reduced by all sums:

1. Paid because of the **bodily injury** by or on behalf of persons or

Copyright, North Carolina Rate Bureau, 2016

5013NC(04) Rev. 04-16

organizations who may be legally responsible. This includes all sums paid under Part A; and

2. Paid or payable because of the **bodily injury** under any disability benefits law or any similar law.

The most we will pay for **bodily injury** damages to an **insured** under this coverage is the lesser of:

1. the limit of bodily injury liability shown in the Declarations for each person for this coverage reduced by all sums described in items 1. and 2. of the preceding paragraph; or

2. the damages sustained by the **insured** for **bodily injury** reduced by:

   a. all sums described in items 1. and 2. in the preceding paragraph; and

   b. all sums paid or payable because of the **bodily injury** under any workers' compensation law. However, this reduction does not apply to the extent that an employer's lien is required to be paid under North Carolina's workers' compensation law.

   The limit of property damage liability under this coverage shall be reduced by all sums paid because of the **property damage** by or on behalf of persons or organizations who may be legally responsible. This includes all sums payable under Part A.

C. The first paragraph of **Arbitration** is deleted and replaced by the following:

   If we and an **insured** do not agree:

1. Whether that **insured** is legally entitled to recover compensatory damages from the owner or operator of an **uninsured motor vehicle**; or

2. As to the amount of such compensatory damages;

   then the **insured** may demand to settle these disputed issues by arbitration. If an **insured** files a lawsuit against us or an owner or operator of an **uninsured motor vehicle** seeking damages that are the subject of the claim for Uninsured Motorists Coverage under this policy, the **insured** shall have the right to demand arbitration only if such lawsuit is filed within the time limit required by the law of the state where the accident occurred for filing a lawsuit against the owner or operator of the **uninsured motor vehicle** for the damages arising out of the accident and only if the **insured** gives us a written demand for arbitration within (30) days after the filing of such lawsuit.

D. Item 5. of **Arbitration** is deleted and the remaining paragraphs are renumbered appropriately.

5. Part C2 - COMBINED UNINSURED / UNDER-INSURED MOTORISTS COVERAGE

   Part C2 is amended as follows:

A. Exclusion A.2. Is deleted and replaced by the following:

   We do not provide coverage for **property damage** or **bodily injury** caused by an uninsured motor vehicle and sustained by any **insured**:

Copyright, North Carolina Rate Bureau, 2016

2. While **occupying your covered auto** when it is being used as a public or livery conveyance. This includes but is not limited to any period of time that **insured** is logged into a **transportation network platform** as a driver, whether or not a passenger is **occupying** the vehicle.

This exclusion does not apply to a share—the—expense car pool.

B. Exclusion C.2. is deleted and replaced by the following:

We do not provide coverage for **bodily injury** caused by an **underinsured motor vehicle** and sustained by any **insured**:

2. While **occupying your covered auto** when it is being used as a public or livery conveyance. This includes but is not limited to any period of time that **insured** is logged into a **transportation network platform** as a driver, whether or not a passenger is **occupying** the vehicle. This exclusion does not apply to a share—the—expense car pool.

C. The fourth and fifth paragraphs of **Limit of Liability** are deleted and replaced by the following:

The limits of bodily injury liability shown in the Declarations for each person and each accident for this coverage shall be reduced by all sums:

1. Paid because of the **bodily injury** by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A; and

2. Paid or payable because of the **bodily injury** under any disability benefits law or any similar law.

The most we will pay for **bodily injury** damages to an **insured** under this coverage is the lesser of:

1. the limit of bodily injury liability shown in the Declarations for each person for this coverage reduced by all sums described in items 1. and 2. of the preceding paragraph; or

2. the damages sustained by the **insured** for **bodily injury** reduced by:

a. all sums described in items 1. and 2. in the preceding paragraph; and

b. all sums paid or payable because of the **bodily injury** under any workers' compensation law. However, this reduction does not apply to the extent that an employer's lien is required to be paid under North Carolina's workers' compensation law.

D. The first paragraph of **Arbitration** is deleted and replaced by the following:

If we and an **insured** do not agree:

1. Whether that **insured** is legally entitled to recover compensatory damages from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle**; or

Copyright, North Carolina Rate Bureau, 2016

5013NC(04) Rev. 04—16

Page 5 of 7

2. As to the amount of such compensatory damages;

then the **insured** may demand to settle these disputed issues by arbitration.

For purposes of an:

1. Uninsured Motorists Coverage claim, if an **insured** files a lawsuit against us or an owner or operator of an **uninsured motor vehicle** seeking damages that are the subject of the claim for Uninsured Motorists Coverage under this policy, the **insured** shall have the right to demand arbitration only if such lawsuit is filed within the time limit required by the laws of the state where the accident occurred for filing a lawsuit against the owner or operator of the **uninsured motor vehicle** for the damages arising out of the accident and only if the **insured** gives us a written demand for arbitration within thirty (30) days after the filing of such lawsuit.

2. Underinsured Motorists Coverage claim, if an **insured** files a lawsuit against an owner or operator of an **underinsured motor vehicle** seeking damages that are the subject of the claim for Underinsured Motorists Coverage under this policy, the **insured** shall have the right to demand arbitration only if the **insured** gives us a written demand for arbitration within thirty (30) days after the later of:

   a. The date we advance payment to the **insured** in an amount equal to a tentative settlement between the **insured** and the owner or operator of the **underinsured motor vehicle**;

   b. The date any applicable liability bonds or policies have been exhausted by payments of judgments or settlements; or

   c. The date the **insured** files a lawsuit against an owner or operator of an **underinsured motor vehicle** seeking damages that are the subject of the claim for Underinsured Motorists Coverage under this policy, provided that such lawsuit is filed within the time limit required by the laws of the state where the accident occurred for filing a lawsuit against the owner or operator of the **underinsured motor vehicle** for the damages arising out of the accident.

E. Item 5. of **Arbitration** is deleted and the remaining paragraphs are renumbered appropriately.

6. **PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**

Part D is amended as follows:

A. Exclusion 1. Is replaced by the following:

We will not pay for:

1. Loss to **your covered auto** or any **non-owned auto** which occurs while it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used by any person who is logged into a **transportation network platform** as a driver, whether or not a passenger is **occupying** the vehicle.

   This exclusion does not apply to a share-the-expense car pool.

Copyright, North Carolina Rate Bureau, 2016

B. Exclusion 9 is changed by deleting the following:

This exclusion does not apply to the interests of Loss Payees in **your covered auto**.

C. The following Exclusion 14 is added:

We will not pay for:

14. Loss to your **covered auto** or any **non-owned auto** while participating in any prearranged, organized, or spontaneous:

    a. racing contest, speed contest, demolition, stunt activity, or competitive driving event, or in practice or preparation for any such contest or use of this type; or

    b. use of a vehicle at a facility designed for racing or high performance driving unless such use is for an activity other than high performance driving, high speed driving, and other than those activities listed in 14.a. above.

7. **PART F - GENERAL PROVISIONS**

Part F is amended as follows:

A. The following is added to paragraph 4 of the **Cancellation** provision:

    g. The named **insured** is no longer an eligible risk under G.S. 58−37−1.

    h. Any other reason permitted by the North Carolina General Statutes.

B. **Other Termination Provisions** is deleted and replaced by the following:

1. If the law in effect in North Carolina at the time this policy is issued, renewed or continued:

    a. requires a longer notice period;

    b. requires a special form of or procedure for giving notice;

    c. modifies any of the stated termination reasons; or

    d. adds any additional termination reasons;

we will comply with those requirements and this policy shall be deemed amended to include any such change in the law.

2. Proof of mailing of any notice shall be sufficient proof of notice.

3. If the named **insured** or a premium finance company cancels this policy, the premium owed or premium refund due will be calculated according to the short rate provisions contained in our manuals. If we cancel this policy, any premium owed or premium refund will be calculated on a pro−rata basis. However, making or offering to make the refund is not a condition of cancellation.

4. The effective date of cancellation stated in the notice shall become the end of the policy period.

Copyright, North Carolina Rate Bureau, 2016

**5013NC(04)** Rev. 04−16

# Uninsured Motorists and Combined Uninsured/Underinsured Motorists Coverage Information

Below, you will find a brief explanation of Uninsured Motorists and Combined Uninsured/Underinsured Motorists coverages. Please remember that this explanation is only informational, and it does not replace or supplement any of the provisions of your policy. Please see your policy for details because the policy controls all issues of coverage.

## Coverage Descriptions

## Uninsured Motorists (UM) Coverage:

- Protects you and your family if injured in a motor vehicle accident caused by an uninsured or hit-and-run motorist who is at-fault.

- Shall be equal to your Bodily Injury (BI) Liability limits unless you elect to purchase greater or lesser limits when your BI Liability limits are $30,000 per person and $60,000 per accident.

- UM Coverage is mandatory.

- Must be issued instead of Combined Uninsured/Underinsured Motorists (UM/UIM) Coverage when your BI Liability limits are $30,000 per person and $60,000 per accident.

- May be purchased with limits up to one million ($1,000,000) per person and one million ($1,000,000) per accident.

- Your selection of UM Coverage limits will remain in effect on this policy and on future renewals until you purchase otherwise.

## Combined Uninsured/Underinsured Motorists (UM/UIM) Coverage:

- Protects you and your family if injured in a motor vehicle accident caused by an uninsured, underinsured, or hit-and-run motorist who is at-fault.

- Pays if you are injured by an at-fault motorist whose BI Liability limits are less than your UM/UIM Coverage limits and less than the amount of damages you are legally entitled to recover from the at-fault motorist. The at-fault motorist's policy pays its BI Liability limits first, then your UM Coverage pays the lesser of:
  - any remaining loss, or
  - the difference between the driver's BI Liability limits and your UM/UIM Coverage limits.

- May not be purchased if your BI Liability limits are $30,000 per person and $60,000 per accident.

- Shall be equal to your Bodily Injury (BI) Liability limits unless you elect to purchase greater or lesser limits when your BI Liability limits are $50,000 per person and $100,000 per accident.

- Combined UM/UIM is mandatory when BI Liability limits are greater than $30,000 per person and $60,000 per accident.

- May be purchased with limits up to one million ($1,000,000) per person and one million ($1,000,000) per accident.

- Your selection of UM/UIM Coverage limits will remain in effect on this policy and on future renewals until you purchase otherwise.

## Uninsured Motorists Property Damage (UMPD) Coverage:

- Pays for damage to your vehicle that you are legally entitled to recover from an at-fault uninsured motorist or identified hit-and-run motor vehicle because of property damage (including loss of use) sustained in an auto accident.

- Is automatically provided when you carry UM or Combined UM/UIM.

- UMPD Coverage limits shall be equal to your Property Damage (PD) Liability limits unless you elect to purchase a lesser limit.

- Your purchase of UMPD Coverage will remain in effect on this policy and on future renewals until you purchase otherwise.

- Vehicle damage is subject to a $100 deductible.

If you have questions, please call Policy Service at 1-800-531-USAA (8722) or visit usaa.com.

999NC(31) Rev. 02-10

# UNINSURED MOTORIST COVERAGE PREMIUMS
## COMBINED UNINSURED/UNDERINSURED MOTORISTS PREMIUMS

You may purchase additional coverage and make changes to your current policy. The premiums below reflect the total premium for this coverage for all vehicles insured on this policy.

### Uninsured Motorists (UM) Coverage

| Semi-annual premium per policy | | | |
|---|---|---|---|
| Limits (Per person/per accident) | Premium | Limits | Premium |
| $ 30,000 /$ 60,000 | $ 16.50 | $ 300,000 /$ 500,000 | $ 27.00 |
| $ 50,000 /$100,000 | $ 17.50 | $ 500,000 /$1,000,000 | $ 29.50 |
| $100,000 /$200,000 | $ 20.00 | $1,000,000 /$1,000,000 | $ 30.50 |
| $100,000 /$300,000 | $ 21.00 | | |

### Combined Uninsured/Underinsured Motorists (UM/UIM) Coverage

| Semi-annual premium per policy | | | |
|---|---|---|---|
| Limits (Per person/per accident) | Premium | Limits | Premium |
| $ 50,000 /$100,000 | $ 29.50 | $ 300,000 /$ 500,000 | $ 142.50 |
| $100,000 /$200,000 | $ 52.00 | $ 500,000 /$1,000,000 | $ 160.50 |
| $100,000 /$300,000 | $ 63.50 | $1,000,000 /$1,000,000 | $ 180.50 |

### Uninsured Motorists Property Damage (UMPD) Coverage

| Semi-annual premium per policy | |
|---|---|
| Limits (Per accident) | Premium |
| $ 25,000 | $ 2.50 |
| $ 50,000 | $ 3.50 |
| $100,000 | $ N/A |

(UMPD premium is in addition to UM or UM/UIM premium.)
(UMPD coverage limits shall be equal to PD Liability coverage limits unless you elect to purchase a lesser limit.)

THIS PAGE INTENTIONALLY LEFT BLANK

Case 1:18-cv-00862-TDS-JLW Document 3 Filed 10/11/18 Page 42 of 113



9800 Fredericksburg Road
San Antonio, Texas 78288

**USAA®**

RECIPROCAL PROVISIONS . . .
apply when United Services Automobile Association, or USAA, is named on the Declarations as the Company.

**A non-assessable policy**
- Reciprocals
- Special definitions and provisions
- Plan of operation

In your policy these sets of words have the same meaning: Policy means Contract; You and your means the Subscriber and the spouse when a resident of the same household; We, us, our, USAA, Company, Reciprocal or Interinsurance Exchange means United Services Automobile Association; Premium means Deposit; Attorney-in-Fact means USAA Reciprocal Attorney-in-Fact, Inc.

Your policy is issued as part of an Interinsurance Exchange by USAA Reciprocal Attorney-in-Fact, Inc. as Attorney-in-Fact under the authority given to it by the subscribers.

No Contingent Liability: You are liable only for the amount of your premium since USAA has a free surplus in excess of the amount required by Article 19.03 of the Texas Insurance Code of 1951, as amended.

Participation: By purchasing this policy, you are a member of USAA and subject to its bylaws. You are entitled to dividends as may be declared by us, after approval as required by the Texas Insurance Code of 1951, as amended.

# THE EASY READING

# AUTO POLICY

# IN

# NORTH CAROLINA

## YOUR PERSONAL AUTO POLICY QUICK REFERENCE

| | Beginning on page | DECLARATIONS PAGE |
|---|---|---|
| | | Your Name and Address |
| | | Your Auto or Trailer |
| | | Policy Period |
| | | Coverages and Amounts of Insurance |
| | **3** | **Agreement and Definitions** |
| **Part A** | **5** | **Liability Coverage** |
| | | Insuring Agreement |
| | | Supplementary Payments |
| | | Exclusions |
| | | Limit of Liability |
| | | Out of State Coverage |
| | | Financial Responsibility Required |
| | | Other Insurance |
| **Part B** | **8** | **Medical Payments Coverage** |
| | | Insuring Agreement |
| | | Exclusions |
| | | Limit of Liability |
| | | Non-Duplication |
| | | Other Insurance |
| | | Arbitration |
| **Part C1** | **11** | **Uninsured Motorists Coverage** |
| | | Insuring Agreement |
| | | Exclusions |
| | | Limit of Liability |
| | | Other Insurance |
| | | Arbitration |
| **Part C2** | **14** | **Combined Uninsured/ Underinsured Motorists Coverage** |
| | | Insuring Agreement |
| | | Exclusions |
| | | Limit of Liability |
| | | Other Insurance |
| | | Arbitration |

5000NC(07) Rev. 7-08

| Part D | 20 | **Coverage for Damage to Your Auto** |
| | | Insuring Agreement |
| | | Transportation Expenses |
| | | Salvage Charges |
| | | Exclusions |
| | | Limit of Liability |
| | | Payment of Loss |
| | | No Benefit to Bailee |
| | | Other Insurance |
| | | Appraisal |
| Part E | 24 | **Duties After an Accident or Loss – Filing A Claim** |
| | | General Duties |
| | | Additional Duties for Uninsured Motorists Coverage |
| | | Additional Duties for Coverage for Damage to Your Auto |

| Part F | 25 | **General Provisions** |
| | | Bankruptcy |
| | | Changes |
| | | Fraud In Connection With Accident or Loss |
| | | Legal Action Against Us |
| | | Our Right to Recover Payment |
| | | Policy Period and Territory |
| | | Termination |
| | |    Cancellation |
| | |    Nonrenewal |
| | |    Automatic Termination |
| | |    Other Termination Provisions |
| | | Transfer of Your Interest in this Policy |

Case 1:18-cv-00862-TDS-JLW   Document 3   Filed 10/11/18   Page 44 of 113

This policy is a legal contract between you and us. The Personal Auto Policy is:

- designed for easy reference;
- simplified to make it more understandable; and
- arranged to better display the available coverage.

# READ YOUR POLICY CAREFULLY

# PERSONAL AUTO POLICY

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

# DEFINITIONS

Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

"We", "us" and "our" refer to the Company providing this insurance.

For the purposes of this policy, a private passenger type auto, pickup or van shall be deemed to be owned by a person if leased:

1. Under a written agreement to that person; and

2. For a continuous period of at least 6 months.

Other words and phrases are defined. They are boldfaced or in quotation marks when used.

**"Bodily injury"** means bodily harm, sickness or disease, including death that results.

**"Business"** means trade, profession or occupation.

**"Family member"** means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

**"Occupying"** means in; upon; getting in, on, out or off.

**"Property damage"** means physical injury to, destruction of, or loss of use of tangible property.

**"Trailer"** means a vehicle designed to be pulled by a:

1. Private passenger auto or station wagon type; or

2. Pickup truck or van.

It also means a farm wagon or farm implement while pulled by a vehicle listed in 1. or 2. above.

**"Your covered auto"** means:

1. Any vehicle shown in the Declarations.

2. A **newly acquired auto.**

3. Any **trailer** you own.

4. Any auto or **trailer** not owned by you while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

   a. breakdown;

   b. repair;

   c. servicing;

   d. loss; or

   e. destruction.

Copyright, North Carolina Rate Bureau, 2005

**5000NC(07)** Rev. 7-08

This provision (4.) does not apply to Part D - Coverage For Damage To Your Auto.

**"Newly acquired auto"** means any of the following types of vehicles you become the owner of during the policy period:

1. a private passenger auto or station wagon type; or

2. a pickup truck or van that:

   a. has a Gross Vehicle Weight as specified by the manufacturer of less than 10,000 pounds; and

   b. is not used for the delivery or transportation of goods and materials unless such use is:

      (1) incidental to your **business** of installing, maintaining or repairing furnishings or equipment; or

      (2) for farming or ranching.

Any coverage for a **newly acquired auto** is subject to the following:

1. If a **newly acquired auto** replaces a vehicle shown in the Declarations, it will have the same coverage as the vehicle it replaced except that coverage, if any, under Part D - Coverage For Damage To Your Auto applies only if you ask us to insure it within 30 days after you become the owner.

2. If a **newly acquired auto** is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations if you ask us to insure it within 30 days after you become the owner.

3. Coverage under this policy terminates for any **newly acquired auto** on the effective date and time of a policy (other than this policy) issued by us or any other company that describes such vehicle on its declarations page.

4. If you ask us to insure a **newly acquired auto** within the applicable specified time period described in 1. or 2. above, any coverage we provide for the **newly acquired auto** begins on the date you become the owner. If you ask us to insure a **newly acquired auto** after the applicable specified time period described above has elasped, any coverage we provide for the **newly acquired auto** will begin at the time you request the coverage. You must pay us any added amount due for any coverage we provide for a **newly acquired auto.**

Copyright, North Carolina Rate Bureau, 2005

5000NC(07)  Rev. 7-08

Case 1:18-cv-00862-TDS-JLW   Document 3   Filed 10/11/18   Page 46 of 113

# PART A - LIABILITY COVERAGE

## INSURING AGREEMENT

We will pay damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the **insured.** We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy.

"Insured" as used in this Part means:

1. You or any **family member** for the ownership, maintenance or use of any auto or **trailer.**

2. Any person using **your covered auto.**

3. For **your covered auto,** any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4. For any auto or **trailer,** other than **your covered auto,** any person or organization but only with respect to legal responsibility for acts or omissions of you or any **family member** for whom coverage is afforded under this Part. This provision applies only if the person or organization does not own or hire the auto or **trailer.**

## SUPPLEMENTARY PAYMENTS

In addition to our limit of liability:

1. We will pay the following on behalf of an **insured:**

   a. Premiums on appeal bonds and bonds to release attachments in any suit we defend. We have no duty to purchase bonds in an amount exceeding our Limit of Liability, and we have no duty to apply for or furnish these bonds; and

   b. All costs taxed against the **insured** and interest accruing after a judgment is entered in any suit we defend. Costs do not include prejudgment interest. Our duty to pay post-judgment interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for the coverage.

2. We will pay the following to an **insured:**

   a. Up to $250 for the cost of bail bonds required because of traffic law violations resulting from an accident. The accident must result in **bodily injury** or **property damage** covered under this policy;

   b. Up to $200 a day for loss of wages or salary, but not other income, because of attendance at hearings or trials at our request;

   c. Up to $200 for expenses incurred by an **insured** for Emergency first aid to others performed at the scene of an accident that involves any auto covered by this policy; and

   d. Other reasonable expenses incurred at our request.

The amount of any costs, wages, salary, or other expenses listed above that are incurred by an **insured** must be reported to us by such **insured** before we will make payment.

Copyright, North Carolina Rate Bureau, 2005

**(PART A Cont'd.)**

## EXCLUSIONS

A. We do not provide Liability Coverage for any **insured:**

1. Who intentionally causes **bodily injury** or **property damage.** This exclusion applies only to the extent that the limit of liability of this policy exceeds the minimum limit required by the financial responsibility law of North Carolina.

2. For **property damage** to property owned or being transported by that **insured.**

3. For **property damage** to property:

   a. rented to;

   b. used by; or

   c. in the care of;

   that **insured.** This exclusion does not apply to a residence or private garage.

4. For **bodily injury** to an employee of that **insured** during the course of employment. This exclusion does not apply to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that **insured's** liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This exclusion does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the **business** of:

   a. selling;

   b. repairing;

   c. servicing;

   d. storing; or

   e. parking;

vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion does not apply to the ownership, maintenance or use of **your covered auto** by:

   a. you;

   b. any **family member;** or

   c. any partner, agent or employee of you or any **family member.**

This exclusion applies only to the extent that the limit of liability of this policy exceeds the minimum limit required by the financial responsibility law of North Carolina.

7. Maintaining or using any vehicle while that **insured** is employed or otherwise engaged in any **business** (other than farming or ranching) not described in Exclusion 6. This exclusion does not apply to the maintenance or use of a:

   a. private passenger auto;

   b. pickup or van that:

      (1) You own; or

      (2) You do not own while used as a temporary substitute for **your covered auto** which is out of normal use because of its:

         (a) breakdown;

         (b) repair;

         (c) servicing;

         (d) loss; or

         (e) destruction; or

   c. **trailer** used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that that **insured** is entitled to do so.

   This Exclusion A.8. does not apply to a **family member** using **your covered auto** which is owned by you.

Copyright, North Carolina Rate Bureau, 2005

9. For **bodily injury** or **property damage** for which that **insured:**

   a. is an insured under a nuclear energy liability policy; or

   b. would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

   A nuclear energy liability policy is a policy issued by any of the following or their successors:

   a. Nuclear Energy Liability Insurance Association;

   b. Mutual Atomic Energy Liability Underwriters; or

   c. Nuclear Insurance Association of Canada.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

   1. Any vehicle, other than **your covered auto,** which is:

      a. owned by you; or

      b. furnished for your regular use.

   2. Any vehicle, other than **your covered auto,** which is:

      a. owned by any **family member;** or

      b. furnished for the regular use of any **family member.**

   However, this exclusion (B.2.) does not apply to your maintenance or use of any vehicle which is:

      a. owned by a **family member;** or

      b. furnished for the regular use of a **family member.**

## LIMIT OF LIABILITY

The limit of liability shown in the Declarations for each person for Bodily Injury Liability Coverage is our maximum limit of liability for all damages for **bodily injury,** including damages for care, loss of services or death, sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one auto accident. The limit of liability shown in the Declarations for each accident for Property Damage Liability Coverage is our maximum limit of liability for all damages to all property resulting from any one auto accident. This is the most we will pay as a result of any one auto accident regardless of the number of:

1. **Insureds;**

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which **your covered auto** is principally garaged, we will interpret your policy for that accident as follows:

If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for **bodily injury** or **property damage** higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

Copyright, North Carolina Rate Bureau, 2005

(PART A Cont'd.)

No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY REQUIRED

When this policy is certified as future proof of financial responsibility, this policy will comply with the law to the extent required. _

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

# PART B - MEDICAL PAYMENTS COVERAGE

## INSURING AGREEMENT

We will pay reasonable expenses incurred for necessary medical and funeral services because of **bodily injury:**

1. Caused by accident; and

2. Sustained by an **insured.**

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

Reasonable medical expenses do not include expenses:

1. For treatment, services, products or procedures that are:

   a. Experimental in nature, for research, or not primarily designed to serve a medical purpose; or

   b. Not commonly and customarily recognized throughout the medical profession and within the United States as appropriate for the treatment of the **bodily injury;** or

2. Incurred for:

   a. The use of thermography or other related procedures of a similar nature; or

   b. The use of acupuncture or other related procedures of a similar nature; or

   c. The purchase or rental of equipment not primarily designed to serve a medical purpose.

Expenses are reasonable only if they are consistent with the usual fees charged by the majority of similar medical providers in the geographical area in which the expenses were incurred for the specific medical service.

Services are necessary only if the services are rendered by a licensed medical provider within the scope of the provider's practice and license and are essential in achieving maximum medical improvement for the **bodily injury** sustained in the accident.

We have the right to make or obtain a utilization review of the medical expenses and services to determine if they are reasonable and necessary for the **bodily injury** sustained.

**"Insured"** as used in this Part means:

1. You or any **family member:**

   a. while **occupying;** or

   b. as a pedestrian when struck by;

   a motor vehicle designed for use mainly on public roads or a trailer of any type.

2. Any other person while **occupying:**

   a. **your covered auto;** or

   b. any other motor vehicle:

      (1) operated by you; or

Copyright, North Carolina Rate Bureau, 2005

**(PART B Cont'd.)**

   (2) operated by a **family member** if the motor vehicle is a private passenger auto or **trailer.**

## EXCLUSIONS

We do not provide Medical Payments Coverage for any **insured** for **bodily injury:**

1. Sustained while **occupying your covered auto** when it is being used as a public or livery conveyance. This exclusion does not apply to a share-the-expense car pool.

2. Sustained while **occupying** any vehicle located for use as a residence or premises.

3. Occurring while employed or otherwise engaged in the **business** of:

   a. selling;

   b. repairing;

   c. servicing;

   d. storing; or

   e. parking;

   vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion applies only if workers' compensation benefits are available for the **bodily injury.**

4. Sustained while **occupying,** or when struck by, any vehicle (other than **your covered auto**) which is:

   a. owned by you; or

   b. furnished for your regular use.

5. Sustained while **occupying,** or when struck by, any vehicle (other than **your covered auto**) which is:

   a. owned by any **family member;** or

   b. furnished for the regular use of any **family member.**

However, this exclusion does not apply to you.

6. Sustained while **occupying** a vehicle without a reasonable belief that that **insured** is entitled to do so.

   This Exclusion 6. does not apply to a **family member** using **your covered auto** which is owned by you.

7. Sustained while **occupying** any auto not owned by, or furnished for the regular use of, you or any **family member,** while used to carry persons or property for a fee. This exclusion does not apply to:

   a. a share-the-expense car pool, or

   b. you or any **family member.**

8. Resulting from the maintenance or use of any auto not owned by, or furnished for the regular use of, you or any **family member,** while that **insured** is engaged in the **business** of:

   a. selling;

   b. repairing;

   c. servicing;

   d. storing; or

   e. parking;

   vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion does not apply to you or any **family member.**

9. Resulting from the maintenance or use of any auto not owned by, or furnished for the regular use of, you or any **family member,** while that **insured** is employed or otherwise engaged in any **business** not described in Exclusion 8. This exclusion does not apply:

   a. to you or any **family member;** or

Copyright, North Carolina Rate Bureau, 2005

**5000NC(07)** Rev. 7-08

b.  if the **bodily injury** results from the operation of a private passenger auto or **trailer** by you.

10. Caused by or as a consequence of:

a.  war (declared or undeclared);

b.  civil war;

c.  insurrection; or

d.  rebellion or revolution.

11. Sustained while **occupying,** any motorized vehicle having fewer than four wheels.

## LIMIT OF LIABILITY

The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident regardless of the number of:

1.  Claims made;

2.  Vehicles or premiums shown in the Declarations:

3.  Vehicles involved in the accident.

## NON-DUPLICATION

No person for whom medical expenses are payable under this coverage shall be paid more than once for the same medical expense under this or similar vehicle insurance, including any no-fault benefits required by law.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

## ARBITRATION

The amount due under this coverage shall be decided by agreement between the **insured** and us. If there is no agreement, the amount due shall be decided by arbitration upon written request of the **insured** or us. Each party shall select a competent and impartial arbitrator. These two shall select a third one. If unable to agree on the third one within 30 days, either party may request a judge of a court of record in the county in which the arbitration is pending to select a third one. The written decision of any two arbitrators shall be binding on us, the **insured,** any assignee of the **insured** and any person or organization with whom the **insured** expressly or impliedly contracts for the rendition of medical services. The arbitrator's decision shall be limited to whether or not the medical expenses were reasonable and the services were necessary, with the amount due being equal only to the reasonable expenses for necessary services. The arbitrators shall not award punitive damages or other noncompensatory damages.

The cost of the arbitrator and any expert witness shall be paid by the party who hired them. The cost of the third arbitrator and other expenses of arbitration shall be shared equally by both parties.

The arbitration shall take place in the county in which the **insured** resides unless the parties agree to another place. State court rules governing procedure and admission of evidence shall be used.

Copyright, North Carolina Rate Bureau, 2005

**INSURING AGREEMENT**

We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of:

1. **Bodily injury** sustained by an **insured** and caused by an accident; and

2. **Property damage** caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle.**

Any judgment for damages arising out of a suit is not binding on us unless we have been served with a copy of the summons, complaint or other process against the uninsured motorist.

**"Insured"** as used in this Part means:

1. You or any **family member.**

2. Any other person **occupying:**

   a. **your covered auto;** or

   b. any other auto operated by you.

3. Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by a person listed in 1. or 2. above.

**"Property damage"** as used in this Part means injury to or destruction of:

1. **Your covered auto.**

2. Any property owned by a person listed in 1. or 2. of **insured.**

**"Uninsured motor vehicle"** means a land motor vehicle or trailer of any type:

1. To which neither:

   a. a liability bond or policy; nor

   b. cash or securities on file with the North Carolina Commissioner of Motor Vehicles;

   applies at the time of the accident.

2. To which a liability bond or policy applies at the time of the accident; provided its limit for liability is less than the minimum limit specified by the financial responsibility law of North Carolina.

3. Which, with respect to damages for **bodily injury** only, is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

   a. you or any **family member;**

   b. a vehicle which you or any **family member** are **occupying;** or

   c. **your covered auto.**

4. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. denies coverage; or

   b. is or becomes insolvent.

However, **"uninsured motor vehicle"** does not include any vehicle or equipment:

1. Owned by you.

2. Owned or operated by a self-insurer under any applicable motor vehicle law; except a self-insurer which is or becomes insolvent.

Copyright, North Carolina Rate Bureau, 2005

Case 1:18-cv-00862-TDS-JLW   Document 3   Filed 10/11/18   Page 53 of 113

(PART C Cont'd.)

3. Owned by:

   a. The United States of America;

   b. Canada;

   c. a state; or

   d. an agency, other than a political subdivision of a., b. or c. above.

4. Operated on rails or crawler treads.

5. Which is a farm type tractor or equipment designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

**EXCLUSIONS**

A. We do not provide Uninsured Motorists Coverage for **property damage** or **bodily injury** sustained by any **insured:**

   1. If that **insured** or the legal representative settles the **bodily injury** or **property damage** claim without our written consent.

   2. While **occupying your covered auto** while it is being used as a public or livery conveyance. This exclusion does not apply to a share-the-expense car pool.

   3. Using a vehicle without a reasonable belief that that **insured** is entitled to do so.

      This Exclusion A.3. does not apply to a **family member** using **your covered auto** which is owned by you.

   4. For the first $100 of the amount of **property damage** to the property of each **insured** as the result of any one accident.

   5. If the property is contained in or struck by a motor vehicle (other than **your covered auto**) owned by you or any **family member.**

6. For any punitive or exemplary damages, or legal costs related thereto.

7. While **occupying,** or when struck by, any motor vehicle owned by you or any **family member** which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

   However, this exclusion does not apply to you or any **family member.**

B. We do not provide Uninsured Motorists Coverage for **property damage** caused by a hit-and-run vehicle whose operator or owner cannot be identified.

C. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or any similar law:

   a. workers' compensation law; or

   b. disability benefits law.

**LIMIT OF LIABILITY**

The limit of bodily injury liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury,** including damages for care, loss of services or death, sustained by any one person in any one auto accident.

Subject to this limit for each person, the limit of bodily injury liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident. The limit of property damage liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages to all property resulting from any one accident. This is the most we will pay for **bodily injury** and **property damage** regardless of the number of:

1. **Insureds;**

Copyright, North Carolina Rate Bureau, 2005

**(PART C Cont'd.)**

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

The limit of liability otherwise applicable under this coverage shall be reduced by all sums:

1. Paid because of the **bodily injury** or **property damage** by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A;

2. Paid or payable because of the **bodily injury** under any workers' compensation law. However, this reduction does not apply to the extent that an employer's lien is required to be paid under North Carolina's workers' compensation law; and

3. Paid or payable because of the **bodily injury** under any disability benefits law or any similar law.

No payment will be made for loss paid or payable to the **insured** under Part D or any policy of property insurance.

Any payment to any person under this coverage will reduce any amount that person is entitled to recover for the same damages under Part A.

This coverage is excess over and shall not duplicate any amount paid or payable under Part B.

## OTHER INSURANCE

If this policy and any other auto insurance policy apply to the same accident, the maximum amount payable under all applicable policies for injuries to an **insured** caused by an **uninsured motor vehicle** shall be the sum of the highest limit of liability for this coverage under each such policy.

In addition, if there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this coverage and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. Further, the execution of a covenant not to enforce judgment by the injured party shall not preclude us from pursuing our right to sue for or otherwise recover any payment made under this coverage from anyone else who may be liable. The person to or for whom payment was made shall do:

   1. Whatever is necessary to enable us to exercise our rights; and

   2. Nothing after loss to prejudice them.

B. If we make a payment under this coverage and the person to or for whom payment is made recovers damages from another, that person shall:

   1. Hold in trust for us the proceeds of the recovery; and

   2. Reimburse us to the extent of our payment.

## ARBITRATION

If we and an **insured** do not agree:

1. Whether that **insured** is legally entitled to recover compensatory damages from the owner or driver of an **uninsured motor vehicle;** or

2. As to the amount of such damages;

the **insured** may demand to settle the dispute by arbitration.

Copyright, North Carolina Rate Bureau, 2005

5000NC(07)  Rev. 7-08

The following procedures will be used:

1. Each party will select a competent arbitrator. The two so selected will select a third.

2. If the third arbitrator is not selected within 30 days, the **insured** or we may request a judge of a court of record to name one. The court must be in the county and state in which arbitration is pending.

3. Each party will pay its chosen arbitrator. Each will pay half of all other expenses of arbitration. Fees to lawyers and expert witnesses are not considered arbitration expenses and are to be paid by the party hiring these persons.

4. Unless the **insured** and we agree otherwise, arbitration will take place in the county and state in which the **insured** lives. Arbitration will be subject to the usual rules of procedure and evidence in such county and state. The arbitrators will resolve the issues. A written decision on which two arbitrators agree will be binding on the **insured** and us.

5. Any arbitration action against the company must begin within the time limit allowed for **bodily injury** or death actions in the state where the accident occurred.

6. Judgment upon award may be entered in any proper court.

7. As an alternative, the **insured** and we may agree to arbitrate by rules other than stated above.

## PART C2 – COMBINED UNINSURED/ UNDERINSURED MOTORISTS COVERAGE

**INSURING AGREEMENT**

We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of:

1. **Bodily injury** sustained by an **insured** and caused by an accident; and

2. **Property damage** caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle.**

We will also pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury** sustained by an **insured** and caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **underinsured motor vehicle**. We will pay for these damages only after the limits of liability under any applicable liability bonds or policies have been exhausted by payments of judgments or settlements, unless we:

1. Have been given written notice in advance of settlement between an **insured** and the owner or operator of the **underinsured motor vehicle; and**

2. Consent to advance payment to the **insured** in the amount equal to the tentative settlement.

Any judgment for damages arising out of a suit is not binding on us unless we have been served with a copy of the summons, complaint or other process against the uninsured or underinsured motorist.

**Insured** as used in this Part means:

1. You or any **family member.**

2. Any other person **occupying:**

   a. **your covered auto;** or

   b. any other auto operated by you.

Copyright, North Carolina Rate Bureau, 2005

**(PART C Cont'd.)**

3. Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by a person listed in 1. or 2. above.

**Property damage** as used in this Part means injury to or destruction of:

1. **Your covered auto.**

2. Any property owned by a person listed in 1. or 2. of **insured.**

**Underinsured motor vehicle** means a land motor vehicle or trailer of any type:

1. The ownership, maintenance or use of which is insured or bonded for liability at the time of the accident; and

2. The sum of the limits of liability under all **bodily injury** liability bonds and insurance policies applicable at the time of the accident is equal to or greater than the minimum limit specified by the financial responsibility law of North Carolina and:

   a. is less than the limit of liability for this coverage; or

   b. the total limit of liability available has been reduced to less than the limit of liability for this coverage by payment of damages to other persons.

However, **underinsured motor vehicle** does not include any vehicle or equipment:

1. Operated on rails or crawler treads.

2. Which is a farm-type tractor or other vehicle designed for use principally off public roads and while not upon public roads.

3. While located for use as a residence or premises.

4. Which is an **uninsured motor vehicle.**

5. Which is insured under Liability Coverage of this policy if such policy's limit of liability for Combined Uninsured/Underinsured Motorists Coverage is equal to or less than its limit of liability for Liability Coverage.

**Uninsured motor vehicle** means a land motor vehicle or trailer of any type:

1. To which neither:

   a. a liability bond or policy; nor

   b. cash or securities on file with the North Carolina Commissioner of Motor Vehicles;

   applies at the time of the accident.

2. To which a liability bond or policy applies at the time of the accident; provided its limit for liability is less than the minimum limit specified by the financial responsibility law of North Carolina.

3. Which, with respect to damages for **bodily injury** only, is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

   a. you or any **family member;**

   b. a vehicle which you or any **family member** are **occupying;** or

   c. **your covered auto.**

4. To which a liability bond or policy applies at the time of the accident, but the bonding or insuring company:

   a. denies coverage; or

   b. is or becomes insolvent.

However, **uninsured motor vehicle** does not include any vehicle or equipment:

1. Owned by you.

2. Owned or operated by a self-insurer under any applicable motor vehicle law; except a self-insurer which is or becomes insolvent.

Copyright, North Carolina Rate Bureau, 2005

(PART C Cont'd.)

3. Owned by:

    a. The United States of America;

    b. Canada;

    c. a state; or

    d. an agency, other than a political subdivision of a., b. or c. above.

4. Operated on rails or crawler treads.

5. Which is a farm type tractor or equipment designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

## EXCLUSIONS

A. We do not provide coverage for **property damage** or **bodily injury** caused by an **uninsured motor vehicle** and sustained by any **insured:**

1. If that **insured** or the legal representative settles the **bodily injury** or **property damage** claim without our written consent.

2. While **occupying your covered auto** while it is being used as a public or livery conveyance. This exclusion does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that **insured** is entitled to do so.

    This Exclusion A.3. does not apply to a **family member** using **your covered auto** which is owned by you.

4. For the first $100 of the amount of **property damage** to the property of each **insured** as the result of any one accident.

5. If the property is contained in or struck by a motor vehicle (other than **your covered auto**) owned by you or any **family member.**

6. For any punitive or exemplary damages, or legal costs related thereto.

7. While **occupying,** or when struck by, any motor vehicle owned by you or any **family member** which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

However, this exclusion does not apply to you or any **family member.**

B. We do not provide coverage for **property damage** caused by a hit-and-run vehicle whose operator or owner cannot be identified.

C. We do not provide coverage for **bodily injury** caused by an **underinsured motor vehicle** and sustained by any **insured:**

1. If that **insured** or the legal representative settles the **bodily injury** claim without our consent. However, this exclusion does not apply if we:

    a. have been given written notice in advance of a settlement between an **insured** and the owner or operator of the **underinsured motor vehicle;** and

    b. we fail to advance payment to the **insured** in an amount equal to the tentative settlement within thirty days following receipt of such written notice.

2. While **occupying your covered auto** while it is being used as a public or livery conveyance. This exclusion does not apply to a share-the-expense car pool.

Copyright, North Carolina Rate Bureau, 2005

(PART C Cont'd.)

3. Using a vehicle without reasonable belief that that **insured** is entitled to do so.

   This Exclusion C.3. does not apply to a **family member** using **your covered auto** which is owned by you.

4. For any punitive or exemplary damages, or legal costs related thereto.

5. While **occupying,** or when struck by, any motor vehicle owned by you or any **family member** which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

   However, this exclusion does not apply to you or any **family member.**

D. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or any similar law:

   1. workers' compensation law; or

   2. disability benefits law.

**LIMIT OF LIABILITY**

The limit of bodily injury liability shown in the Declarations for each person for Combined Uninsured/Underinsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury,** including damages for care, loss of services or death, sustained by any one person in any one auto accident.

Subject to this limit for each person, the limit of bodily injury liability shown in the Declarations for each accident for Combined Uninsured/Underinsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident. The limit of property damage liability shown in the Declarations for each accident for Combined Uninsured/Underinsured Motorists Coverage is our maximum limit of liability for all damages for **property damage** caused by an **uninsured motor vehicle** and resulting from any one accident.

This is the most we will pay for **bodily injury** and **property damage** regardless of the number of:

1. **Insureds;**

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

The limits of bodily injury liability shown in the Declarations for each person and each accident for this coverage shall be reduced by all sums:

1. Paid because of the **bodily injury** by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A;

2. Paid or payable because of the **bodily injury** under any workers' compensation law. However, this reduction does not apply to the extent that an employer's lien is required to be paid under North Carolina's workers' compensation law; and

3. Paid or payable because of the **bodily injury** under any disability benefits law or any similar law.

The most we will pay for **bodily injury** damages to an **insured** under this coverage is the lesser of:

a. the limit of bodily injury liability shown in the Declarations for each person for this coverage reduced by all sums described in items 1., 2. and 3. of the preceding paragraph; or

b. the damages sustained by the **insured** for **bodily injury** reduced by all sums described in items 1., 2. and 3. in the preceding paragraph.

Copyright, North Carolina Rate Bureau, 2005

Case 1:18-cv-00862-TDS-JLW   Document 3   Filed 10/11/18   Page 59 of 113

(PART C Cont'd.)

The limit of property damage liability under this coverage shall be reduced by all sums paid because of the **property damage** by or on behalf of persons or organizations who may be legally responsible. This includes all sums payable under Part A.

No payment will be made for loss paid or payable to the **insured** under Part D or any policy of property insurance.

Any payment to any person under this coverage will reduce any amount that person is entitled to recover for the same damages under Part A.

This coverage is excess over and shall not duplicate any amount paid or payable under Part B.

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this coverage and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. Further, the execution of a covenant not to enforce judgment by the injured party shall not preclude us from pursuing our right to sue for or otherwise recover any payment made under this coverage from anyone else who may be liable. The person to or for whom payment was made shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

However, our rights under this paragraph do not apply against the owner or operator of an **underinsured motor vehicle** if we have been given written notice in advance of a settlement and fail to advance payment in an amount equal to the tentative settlement within 30 days following receipt of such notice.

B. If we make a payment under this coverage and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

## OTHER INSURANCE

If this policy and any other auto insurance policy apply to the same accident, the maximum amount payable under all applicable policies for all injuries to an **insured** caused by an **uninsured motor vehicle** or **underinsured motor vehicle** shall be the sum of the highest limit of liability for this coverage under each policy.

In addition, if there is other applicable similar insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

## ARBITRATION

If we and an **insured** do not agree:

1. Whether that **insured** is legally entitled to recover compensatory damages from the owner or driver of an **uninsured motor vehicle** or **underinsured motor vehicle**; or

2. As to the amount of such damages;

the **insured** may demand to settle the dispute by arbitration.

The following procedure will be used:

1. Each party will select a competent arbitrator. The two so selected will select a third.

2. If the third arbitrator is not selected within 30 days, the **insured** or we may request a judge of a court of record to name one. The court must be in the county and state in which arbitration is pending.

Copyright, North Carolina Rate Bureau, 2005

5000NC(07) Rev. 7-08

**(PART C Cont'd.)**

3. Each party will pay its chosen arbitrator. Each will pay half of all other expenses of arbitration. Fees to lawyers and expert witnesses are not considered arbitration expenses and are to be paid by the party hiring these persons.

4. Unless the **insured** and we agree otherwise, arbitration will take place in the county and state in which the **insured** lives. Arbitration will be subject to the usual rules of procedure and evidence in such county and state. The arbitrators will resolve the issues. A written decision on which two arbitrators agree will be binding on the **insured** and us.

5. Any arbitration action against the company must begin within the time limit allowed for **bodily injury** or death actions in the state where the accident occurred.

6. Judgment upon award may be entered in any proper court.

7. As an alternative, the **insured** and we may agree to arbitrate by rules other than stated above.

---

# PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

**INSURING AGREEMENT**

We will pay for direct and accidental loss to **your covered auto** or any **non-owned auto,** including their equipment. Direct and accidental loss does not include any reduction in the value of any vehicle after it has been repaired, as compared to its value before it was damaged.

We will pay for loss to **your covered auto** caused by:

1. Other than **collision** only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a **non-owned auto,** we will provide the broadest coverage applicable to any **your covered auto** shown in the Declarations.

Our payment will be reduced by any deductible shown in the Declarations. The deductible will not apply to a loss caused by:

1. fire or lightning;

2. smoke due to a sudden, unusual and faulty operation of any fixed heating equipment

serving the premises in which the auto is stored;

3. the stranding, sinking, burning, **collision,** or derailment of any conveyance in or on which the auto is being transported;

**"Collision"** means the upset of **your covered auto** or a **non-owned auto** or their impact with another vehicle or object.

Loss caused by the following is considered other than **collision:**

1. Missiles or falling objects;

2. Fire;

3. Theft or larceny;

4. Explosion or earthquake;

5. Windstorm;

6. Hail, water or flood;

7. Malicious mischief or vandalism;

8. Riot or civil commotion;

9. Contact with bird or animal; or

10. Breakage of glass.

If loss is caused by contact with a bird or animal, or if breakage of glass is caused by **collision,** you may elect to have either loss considered to be caused by **collision.**

Copyright, North Carolina Rate Bureau, 2005

**(PART D Cont'd.)**

**"Non-owned auto"** means:

1. Any private passenger auto, station wagon type, pickup truck, van or **trailer** not owned by or furnished or available for the regular use of you or any **family member** while in the custody of or being operated by you or any **family member.**

2. Any auto or **trailer** you do not own while used as a temporary substitute for **your covered auto** which is out of normal use because of its:

   a. breakdown;

   b. repair;

   c. servicing;

   d. loss; or

   e. destruction.

We will also pay for direct and accidental loss caused by fire or lightning to clothes or other personal effects:

1. which are owned by you or any **family member;** and

2. which are in or on **your covered auto.**

**"Permanently installed"** means installed by bolts, brackets, or welding in a location in accordance with applicable laws and regulations for the installation of such equipment or device.

## TRANSPORTATION EXPENSES

In addition, we will pay, without application of a deductible, up to $15 per day, to a maximum of $450, for:

1. Transportation expenses incurred by you in the event of a total theft of **your covered auto.** This applies only if the Declarations indicate that Other Than Collision is provided for that auto.

2. Loss of use expenses for which you become legally responsible in the event of the total theft of a **non-owned auto.** This applies only if the Declarations indicate that Other Than Collision is provided for any **your covered auto.**

We will pay only expenses incurred during the period:

1. Beginning 48 hours after the theft; and

2. Ending when **your covered auto** or the **non-owned auto** is returned to use or we pay for its loss.

## SALVAGE CHARGES

In addition, we will pay general average and salvage charges that you or any **family member** are legally responsible for in transporting an auto.

## EXCLUSIONS

We will not pay for:

1. Loss to **your covered auto** or any **non-owned auto** which occurs while they are being used as a public or livery conveyance. This exclusion does not apply to a share-the-expense car pool.

2. Damage due and confined to:

   a. wear and tear;

   b. freezing;

   c. mechanical or electrical breakdown or failure; or

   d. road damage to tires.

   This exclusion does not apply if the damage results from the total theft of **your covered auto** or any **non-owned auto.**

3. Loss due to or as a consequence of:

   a. radioactive contamination;

Copyright, North Carolina Rate Bureau, 2005

**(PART D Cont'd.)**

    b.  war (declared or undeclared);

    c.  civil war;

    d.  insurrection; or

    e.  rebellion or revolution.

4.  Loss to:

    a.  any electronic equipment or device that records, emits, amplifies, receives or transmits audio, visual, or data signals, including but not limited to:

       (1)  radios and stereos;

       (2)  tape decks;

       (3)  compact disc players or recorders;

       (4)  citizens band radios;

       (5)  telephones;

       (6)  two-way mobile radios;

       (7)  scanning monitor receivers;

       (8)  television monitor receivers;

       (9)  video cassette players or recorders;

     (10)  audio cassette players or recorders;

     (11)  personal computers; or

     (12)  digital video disc player or recorder.

    b.  tapes, records, discs, or other media used with any equipment or device described in a.

    c.  any accessories used with equipment described in a.

  Exclusions 4.a. and 4.c. do not apply to:

    a.  any equipment or device that is **permanently installed** by the vehicle's manufacturer; or

    b.  the first $1,000 of any equipment or device that is **permanently installed** by other than the vehicle's manufacturer;

    in any **your covered auto** or a **non-owned auto.**

5.  Loss to a camper body or **trailer** you own which is not shown in the Declarations. This exclusion (5.) does not apply to a camper body or **trailer** you:

    a.  acquire during the policy period; and

    b.  ask us to insure within the policy period or within 30 days after you become the owner.

6.  Loss to any **non-owned auto** while used by you or any **family member** in the **business** of:

    a.  selling;

    b.  repairing;

    c.  servicing;

    d.  storing; or

    e.  parking;

  vehicles designed for use mainly on public highways. This includes road testing and delivery.

7.  Loss to any **non-owned auto** if used without the express or implied permission of the owner or other person in lawful possession of such vehicle.

8.  With respect to any **trailer** shown in the Declarations, loss to:

    a.  awnings or cabanas; or

    b.  equipment designed to create additional living facilities.

Copyright, North Carolina Rate Bureau, 2005

**(PART D Cont'd.)**

9. Loss to **your covered auto** or any **non-owned auto** due to forfeiture ordered by the courts or destruction or confiscation by governmental or civil authorities because you or any **family member:**

   a. engaged in illegal activities; or

   b. failed to comply with Environmental Protection Agency or Department of Transportation standards.

   This exclusion does not apply to the interests of Loss Payees in **your covered auto.**

10. Loss to equipment designed or used to detect or deter radar, laser or other speed monitoring equipment whether or not **permanently installed.**

11. Loss to any **non-owned auto** being maintained or used by any person while employed or otherwise engaged in any **business** not described in Exclusion 6. This exclusion does not apply to the maintenance or use by you or any **family member** of a **non-owned auto** which is a private passenger auto or **trailer.**

12. Loss to any custom furnishings or equipment in or upon any **your covered auto** or a **non-owned auto** including, but not limited to:

    a. special carpeting and insulation, furniture or bars;

    b. facilities for cooking and sleeping;

    c. height extending roofs or ladders;

    d. custom windows, murals, paintings or other decals or graphics;

    e. tool boxes and fifth wheel conversions;

    f. side exhausts and headers;

    g. winches and roll bars;

h. special wheels/tires; or

i. body or suspension alterations.

However, this exclusion (12.):

a. does not apply to the first $1,000 of any such custom furnishings or equipment; and

b. does not apply to a camper body shown in the Declarations, or a cap, cover or bedliner in or upon any pickup truck you own.

13. Loss to, or loss of use of, a **non-owned auto** rented by:

    a. you; or

    b. any **family member;**

    if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that **family member,** pursuant to the provisions of any applicable rental agreement or state law.

## LIMIT OF LIABILITY

Our limit of liability will be the lesser of the:

1. Actual cash value of the stolen or damaged property;

2. Amount necessary to repair or replace the property with other property of like kind and quality.

   This amount does not include any reduction in the value of the property after it has been repaired, as compared to its value before it was damaged.

Subject to the above, our limit of liability for loss to:

1. Personal effects is $100; and

2. A **trailer** not owned by you is $1,500.

Copyright, North Carolina Rate Bureau, 2005

**(PART D Cont'd.)**

An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss.

## PAYMENT OF LOSS

We may pay for the loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

    a.  You; or

    b.  The address shown in this policy. If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value. (IN THE REPAIR OF **YOUR COVERED AUTO** UNDER THE PHYSICAL DAMAGE COVERAGE PROVISIONS OF THIS POLICY, WE MAY REQUIRE OR SPECIFY THE USE OF AUTOMOBILE PARTS NOT MADE BY THE ORIGINAL MANUFACTURER. THESE PARTS ARE REQUIRED TO BE AT LEAST EQUAL IN TERMS OF FIT, QUALITY, PERFORMANCE AND WARRANTY TO THE ORIGINAL MANUFACTURER PARTS THEY REPLACE.)

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER INSURANCE

If other insurance also covers the loss we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a **non-owned auto** shall be excess over any other collectible insurance.

## APPRAISAL

If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1.  Pay its chosen appraiser; and

2.  Bear the expenses of the appraisal and umpire equally.

We do not waive any of our rights under this policy by agreeing to an appraisal.

## LOSS PAYEE

If a Loss Payee is shown in the Declarations, then any Collision Coverage or Other Than Collision Coverage provided by this policy applies to the Loss Payee's interest in **your covered auto.** If Collision Coverage or Other Than Collision Coverage is cancelled or nonrenewed, we will provide coverage for the Loss Payee's interest until 10 days after the date we mail or electronically transmit a notice of the cancellation or nonrenewal to the Loss Payee. Any coverage for the Loss Payee's interest shall terminate on the earlier of the expiration of this 10 day period or the effective date of a policy or insurance binder for similar coverage for the Loss Payee's interest issued by another insurance carrier. Except for any continuation of coverage for the Loss Payee's interest that may be provided under this paragraph in connection with the Loss Payee's right to notice of cancellation or nonrenewal, this coverage for the Loss Payee's interest is only provided for a loss that would otherwise be payable to you.

Copyright, North Carolina Rate Bureau, 2005

(PART D Cont'd.)

Notwithstanding any other provisions of this policy, including but not limited to any continuation of coverage for the Loss Payee's interest as set forth above, if Collision Coverage or Other than Collision Coverage is rescinded, the Loss Payee's interest will not be protected and the Loss Payee shall have no rights greater than your rights to recover for a loss.

If we pay you or the Loss Payee, then we are entitled to your and the Loss Payee's rights of recovery to the extent of our payment. Our right of recovery does not impair the Loss Payee's right to recover the full amount of its claim from you.

## PART E - DUTIES AFTER AN ACCIDENT OR LOSS - FILING A CLAIM

### GENERAL DUTIES

We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

A person seeking coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit as often as we reasonably require:

   a. to physical exams by physicians we select. We will pay for these exams.

   b. to examinations under oath and subscribe the same.

4. Authorize us to obtain:

   a. medical reports; and

   b. other pertinent records.

5. Submit a proof of loss when required by us.

### ADDITIONAL DUTIES FOR UNINSURED AND COMBINED UNINSURED/ UNDERINSURED MOTORISTS COVERAGE

A person seeking Uninsured or Combined Uninsured/Underinsured Motorists Coverage must also:

1. Promptly notify the police if a hit-and-run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought. A suit may not be brought by an **insured** until 60 days after that person notifies us of their belief that the prospective defendant is an uninsured motorist.

Any person who intends to pursue recovery against the owner or operator of an **underinsured motor vehicle** for damages beyond those paid or payable under this policy shall give us:

1. Notice of such intent; and

2. The opportunity to participate, at our expense, in the prosecution of such claim.

### ADDITIONAL DUTIES FOR COVERAGE FOR DAMAGE TO YOUR AUTO

A person seeking Coverage For Damage To Your Auto must also:

1. Take reasonable steps after loss to protect **your covered auto** or any **non-owned auto** and their equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if **your covered auto** or any **non-owned auto** is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

Copyright, North Carolina Rate Bureau, 2005

## BANKRUPTCY

Bankruptcy or insolvency of the **insured** shall not relieve us of any obligations under this policy.

## CHANGES

The premium for each of **your covered autos** is based on information we have received from you or other sources. You agree:

1. That if any of this information material to the development of the policy premium is incorrect, incomplete or changed, we may adjust the premium accordingly during the policy period.

2. To cooperate with us in determining if this information is correct and complete, and to advise us of any changes in this information.

Any adjustment of your premium will be made using the rules in effect at the time of the change.

Premium adjustment may be made as the result of a change in:

1. Autos insured by the policy, including changes in use.

2. Drivers.

3. Coverages or coverage limits.

4. Rating territory.

5. Eligibility for discounts or other premium credits.

We may revise your policy coverages to provide more protection without additional premium charge. If we do this and you have the coverage which is changed, your policy will automatically provide the additional coverage as of the date the revision is effective in North Carolina. Otherwise, this policy contains all of the coverage agreements between you and us. Its terms may not be changed or waived except by an endorsement issued by us.

## FRAUD OR MATERIAL MISREPRESENTATION

We do not provide coverage for any **insured:**

1. who has made a fraudulent statement or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy; or

2. if a named insured made a material misrepresentation in the application for this policy of insurance.

This provision applies to Part A – Liability Coverage to the extent that the limits of liability exceed the minimum limits required by the Financial Responsibility Law of North Carolina. If we make payment under Part A – Liability Coverage which we would not have otherwise made in the absence of the preceding sentence, then we shall have the right to recover such payment from any **insured** who made a fraudulent statement, engaged in fraudulent conduct, or made a material misrepresentation.

## LEGAL ACTION AGAINST US

No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

1. We agree in writing that the **insured** has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

Copyright, North Carolina Rate Bureau, 2005

Case 1:18-cv-00862-TDS-JLW   Document 3   Filed 10/11/18   Page 67 of 113

(PART F Cont'd.)

No person or organization has any right under this policy to bring us into any action to determine the liability of an **insured.**

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. That person shall do:

   1. Whatever is necessary to enable us to exercise our rights; and

   2. Nothing after loss to prejudice them.

   However, our rights under this paragraph do not apply to:

   1. Part B;

   2. Parts C1 and C2, as those parts contain separate provisions which state our right to recover payment under those Parts;

   3. Part D, against any person using **your covered auto** with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

   1. Hold in trust for us the proceeds of the recovery; and

   2. Reimburse us to the extent of our payment.

   However, our rights under this paragraph do not apply to Part B.

## POLICY PERIOD AND TERRITORY

This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, **your covered auto** while being transported between their ports.

## TERMINATION  -  CANCELLATION, NONRENEWAL, AUTOMATIC TERMINATION, OTHER TERMINATION PROVISIONS

**Cancellation.** This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

   a. returning this policy to us; or

   b. giving us advance written notice of the date cancellation is to take effect.

2. We may cancel the Liability, Medical Payments and Uninsured Motorists or Combined Uninsured/Underinsured Motorists Coverages by mailing by first class mail to the named insured shown in the Declarations at the last known address:

   a. at least 15 days notice if cancellation is for nonpayment of premium; or

   b. at least 60 days notice in all other cases.

Copyright, North Carolina Rate Bureau, 2005

3. We may cancel any coverage other than Liability, Medical Payments and Uninsured Motorists or Combined Uninsured/ Underinsured Motorists Coverages by mailing to the named insured shown in the Declarations at the last known address 10 days notice.

4. We will cancel the Liability, Medical Payments and Uninsured Motorists or Combined Uninsured/Underinsured Motorists Coverages only for the following reasons:

   a. Nonpayment of premiums.

   b. You become a nonresident of North Carolina and are not otherwise entitled to insurance through the Reinsurance Facility on submission of new application.

   c. The termination of our contract with the agent through whom this policy was written. This does not apply if we terminate the contract because of the quality of the agent's insureds.

   d. The cancellation of this policy pursuant to a power of attorney given to a company licensed pursuant to the provisions of G.S. 58-35-5.

   e. You fail, at time of renewal, to meet the requirements of our corporate charter, articles of incorporation or by-laws, if we are organized for the sole purpose of providing members with insurance policies in North Carolina.

   f. If you knowingly make a material misrepresentation of:

      (1) the years of driving experience; or

      (2) the driving record of

      you or any other driver who lives with you and customarily uses **your covered auto.**

**Nonrenewal.** If we decide not to renew or continue the Liability, Medical Payments and Uninsured Motorists or Combined Uninsured/Underinsured Motorists Coverages of this policy we will mail notice to the named insured shown in the Declarations at the last known address. Notice will be mailed at least 60 days before the end of the policy period. If we decide not to renew or continue any other coverage, we will mail the notice at least 10 days before the end of the policy period. We will refuse to renew or continue this policy only as permitted by the laws of North Carolina.

**Automatic Termination.** If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on **your covered auto,** any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

**Other Termination Provisions**

1. If the law in effect in North Carolina at the time this policy is issued, renewed or continued:

   a. requires a longer notice period;

   b. requires a special form of or procedure for giving notice; or

   c. modifies any of the stated termination reasons;

   we will comply with those requirements.

2. Proof of mailing of any notice shall be sufficient proof of notice.

Copyright, North Carolina Rate Bureau, 2005

**(PART F Cont'd.)**

3. If the Named Insured or a premium finance company cancels this policy, the premium owed or premium refund due will be calculated according to the short rate provisions contained in our manuals. If we cancel this policy, any premium owed or premium refund will be calculated on a pro-rata basis. However, making or offering to make the refund is not a condition of cancellation.

4. The effective date of cancellation stated in the notice shall become the end of the policy period.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations;

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use **your covered auto;** and

3. Any person having proper temporary custody of **your covered auto,** as an **insured,** until the appointment of a legal representative.

Coverage will only be provided until the end of the policy period.

## AUTO REPAIRS

We shall not recommend the use of a particular motor vehicle repair service without clearly informing the claimant that:

1. the claimant is under no obligation to use the recommended repair service;

2. the claimant may use the repair service of the claimant's choice; and

3. the amount determined by us to be payable under the policy will be paid regardless of whether or not the claimant uses the recommended repair service.

## CHOICE OF LAW

This policy is issued in accordance with the laws of North Carolina and covers property or risks principally located in North Carolina. Any and all claims or disputes in any way related to this policy shall be governed by the laws of North Carolina.

(NC 00 01 Ed. 6-05)

Copyright, North Carolina Rate Bureau, 2005

# EXHIBIT "C"

**USAA®**

9800 Fredericksburg Road
San Antonio, TX 78288

DAVID W HARRELSON
400 JERUSALEM RD
LEXINGTON NC 27292-8658

April 7, 2017

Reference: Denial of coverage

Dear Mr. Harrelson,

Based on our investigation, the claim referenced below is not covered under your existing policy. Therefore, we're unable to assist you with the loss.

| | |
|---|---|
| **Policyholder:** | David W Harrelson |
| **Reference #:** | 029534991-2 |
| **Date of loss:** | November 29, 2016 |
| **Loss location:** | Lexington, North Carolina |

I've included a copy of the policy language for your review.

*Part A Exclusions*

*We do not provide Liability Coverage for the ownership, maintenance or use of:*

*1. Any vehicle, other than your covered auto, which is:*
*a. owned by you; or*
*b. furnished for your regular use.*

*2. Any vehicle, other than your covered auto, which is:*
*a. owned by any family member; or*
*b. furnished for the regular use of any family member.*

*However, this exclusion (B.2.) does not apply to your maintenance or use of any vehicle which is:*
*a. owned by a family member; or*
*b. furnished for the regular use of a family member.*

**Important Legal Information**
Nothing in this letter is intended to waive any other terms or conditions of the policy. Likewise, we do not intend to waive any rights conferred by the policy or the law.

I'm sorry we're unable to assist you with this loss.

You may submit correspondence or questions to me using one of the following options:

029534991 - DM-04664 - 2 - 7932 - 48

54577-1216

**usaa.com or our mobile app:** Upload documents or post a secure message to your claim file through the Claim Communication Center.

**Address:** USAA Claims Department
P.O. Box 33490
San Antonio, TX 78265
**Fax:** 1-800-531-8669
**Phone:** 210-531-8722, x44082

Sincerely,

Dan Hawkins, SCLA
Southeast Regional Office
USAA General Indemnity Company

0901119c9a211f4f

USAA Confidential

# EXHIBIT "D"

STATE OF NORTH CAROLINA    FILED IN THE GENERAL COURT OF JUSTICE
                                      SUPERIOR COURT DIVISION
DAVIDSON COUNTY                       17 CVS

DAWN HAYES BYRD,                    )
                 Plaintiffs,        )
                                    )
        v.                          )          COMPLAINT
                                    )
SHERRI HARRELSON, DAVID             )
HARRELSON and CARLTON PAUL          )
CRANFORD,                           )
                 Defendants.        )
_____ )

        NOW COMES Plaintiff, Dawn Hayes Byrd, by and through the undersigned

counsel, and alleges and says the following:

                              PARTIES

        1.      Plaintiff, Dawn Hayes Byrd, is a citizen and resident of Davidson County,

Lexington, North Carolina.

        2.      Defendant Sherri Harrelson is a citizen and resident of Davidson County,

Lexington, North Carolina, and at all time relevant herein was the owner of a 2001 Jeep

bearing VIN#1J4FA49S81P331026 ("The Jeep").

        3.      Defendant David Harrelson is a citizen and resident of Davidson County,

Lexington, North Carolina and is the husband of Sherri Harrelson, and at all times

relevant herein was not an owner of the 2001 Jeep bearing VIN#1J4FA49S81P331026.

        4.      Carlton Paul Cranford ("Cranford") is a citizen and resident of Davidson

County, Lexington, North Carolina, and on 29 November 2016, was a minor residing

with his mother, Sherri Harrelson, and step-father, David Harrelson at their home in

Lexington, North Carolina.

                                        1

2133883

## THE ACCIDENT OF 29 NOVEMBER 2016

5. On 29 November 2016, at approximately 7:24 a.m., Carlton Paul Cranford, with the permission and at the direction of Sherri Harrelson and David Harrelson, was operating The Jeep and traveling north on Highway NC 47. Cranford crossed the center line colliding with a 2011 Volkswagen operated by plaintiff, Dawn Byrd. Cranford was operating The Jeep in a careless manner and failed to obey the rules of the road in that he carelessly and recklessly crossed the center line of Highway 47.

6. At all relevant times Cranford was operating The Jeep, he had a duty of care to operate the vehicle in a safe manner, consistent with the rules of the road and North Carolina law.

7. Cranford breached his duty of care to Ms. Byrd by failing to keep a proper lookout and by crossing the center line, proximately and directly resulting in damages to Ms. Byrd, including but not limited to past and future medical expenses, present and future pain and suffering and lost wages—all of which are hereinafter referred to as her "damages."

8. Upon information and belief, at the time of the accident described herein Cranford was transporting a younger sibling as a passenger, at the direction of Sherri Harrelson and David Harrelson.

### FIRST CLAIM FOR RELIEF
#### (Negligence – Carlton Paul Cranford)

9. The allegations in Paragraphs 1-8 are re-alleged as if fully set forth herein.

10. On 29 November 2016, Carlton Paul Cranford owed a duty of care to plaintiff.

11. On 29 November 2016, Carlton Paul Cranford breached his duty of care by failing to follow the rules of the road, by failing to keep a proper lookout, and by crossing the center line and driving in a careless and reckless manner. As a direct and

2

2133883

proximate result of Cranford's negligence as alleged herein, plaintiff has sustained injuries and damages in an amount exceeding $25,000.00, as to be determined at the trial of this matter.

## SECOND CLAIM FOR RELIEF
### (Family Purpose Doctrine-Sherri Harrelson)

12.    Paragraphs 1-11 are re-alleged as if fully set forth herein.

13.    On 29 November 2016 Cranford, the minor son of Sherri Harrelson, was a member of her household, and Sherri Harrelson was the owner in control of The Jeep, and was living in the same home as Cranford.

14.    On 29 November 2016, The Jeep was owned and maintained for the general use, pleasure and convenience of Sherri Harrelson's family.

15.    On 29 November 2016, The Jeep was being used with the express or implied consent of Sherri Harrelson.

16.    Based on the foregoing, Sherri Harrelson, under North Carolina's Family Purpose Doctrine, is personally liable for the negligent conduct of her son, Carlton Cranford, as alleged herein, and plaintiff is entitled to damages in an amount exceeding $25,000.00 as to be determined at the trial of this matter.

## THIRD CLAIM FOR RELIEF
### (Family Purpose Doctrine – David Harrelson)

17.    Paragraphs 1-16 are re-alleged as if fully set forth herein.

18.    At the time of the accident on 29 November 2016, Carlton Cranford was a member of the household of David Harrelson, and was living in the home with David Harrelson and wife, Sherri Harrelson.

19.    At the time of the accident on 29 November 2016, The Jeep was maintained for the general use, pleasure and convenience of the family of Defendant David Harrelson.

3

2133883

20.    At the time of the accident on 29 November 2016, The Jeep was used with the express or implied consent, and at the direction of David Harrelson, who upon information and belief, had control of The Jeep.

21.    Based on the foregoing, David Harrelson, under North Carolina's Family Purpose Doctrine, is personally liable for the negligent conduct of Carlton Cranford as alleged herein, and plaintiff is entitled to damages in an amount exceeding $25,000.00 as to be determined at the trial of this matter.

WHEREFORE Plaintiff prays for the following relief:

1.    That the court award plaintiff monetary damages to plaintiff against defendants, either individually or jointly and severally.

2.    That the court tax defendants with costs and attorney's fees as allowed by law.

3.    That the court grant plaintiff any other relief permitted by law.

THIS the _27_ day of November 2017.

WYATT EARLY HARRIS WHEELER LLP
Attorney for Plaintiffs

BY:    _____
STANLEY F. HAMMER
For the Firm
State Bar No.: 12421

OF COUNSEL:

WYATT EARLY HARRIS WHEELER LLP
P.O. Drawer 2086
High Point, NC 27261
Telephone: 336.819.6013
Facsimile: 336.819.6073
Email: Shammer@wehwlaw.com

4

2133883

# STATE OF NORTH CAROLINA

File No.

DAVIDSON County

In The General Court Of Justice
☐ District ☒ Superior Court Division

Name Of Plaintiff
Dawn Hayes Byrd

Address
c/o P.O. Drawer 2086

City, State, Zip
High Point, NC 27261

VERSUS

Name Of Defendant(s)
Sherri Harrelson, David Harrelson and Carlton Paul Cranford

**CIVIL SUMMONS**
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3 and 4

Date Original Summons Issued

Date(s) Subsequent Summons(es) Issued

---

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| Sherri Harrelson | David Harrelson |
| 400 Jerusalem Road | 400 Jerusalem Road |
| Lexington, NC 27292 | Lexington, NC 27292 |

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued | Time |
|---|---|---|
| Stanley F. Hammer | 11-30-17 | 2:54 ☐ AM ☒ PM |
| Wyatt Early Harris Wheeler LLP | Signature | |
| P.O. Drawer 2086 | | |
| High Point, NC 27261 | ☒ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

---

☐ **ENDORSEMENT (ASSESS FEE)**
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days.

| Date Of Endorsement | Time |
|---|---|
| | ☐ AM ☐ PM |
| Signature | |
| ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court. | |

NOTE TO PARTIES: *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 8/16
© 2016 Administrative Office of the Courts

(Over)

# EXHIBIT "E"

STATE OF NORTH CAROLINA                    COUNTY OF _____

### COVENANT NOT TO ENFORCE JUDGMENT BEYOND THE EXTENT OF AVAILABLE EXCESS LIABILITY AND UNDERINSURED MOTORIST COVERAGE AND RESERVING RIGHTS TO PURSUE ANY OTHER AVAILABLE INSURANCE AND OTHER INSURANCE CARRIER

KNOW ALL MEN BY THESE PRESENTS that for and in consideration of the sum of ONE HUNDRED THOUSAND DOLLARS AND 00/100 ($100,000.00) DOLLARS in hand paid to Dawn Byrd (hereinafter referred to as "the Undersigned") by Allstate Insurance Company (hereinafter referred to as "Allstate") on behalf of its insureds, Carlton Cranford and Brent Cranford (hereinafter referred to as "the Insureds"), the receipt of which said sum is hereby acknowledged, the Undersigned do hereby enter into this Covenant Not to Enforce Judgment Beyond the Extent of Available Insurance provided by other insurance carriers in connection with certain claims arising from an automobile accident which occurred on or about November 29, 2016 in which said accident it is alleged that the Undersigned sustained personal injuries, (hereinafter referred to as "the Accident");

It is stipulated and agreed to that at the time of the Accident on November 29, 2016, the Insureds had in place a motor vehicle liability insurance policy with Allstate (Claim No. 0437547078) with bodily injury liability limits in the amount of $100,000.00 per person /$300,000.00 per accident. It is further stipulated and agreed that the payment by Allstate in the amount of $100,000.00 to the Undersigned exhausts its "per person" limit of liability under the aforementioned insurance policy issued to the Insureds;

While willing to enter into this Covenant, the Undersigned, are, however, not willing to provide a Full Release of Claims that might be construed so as to prevent the Undersigned from pursuing or prosecuting additional claims for excess liability and/or underinsured motorist coverage against any other person or insurance carriers for damages in excess of the $100,000.00 in liability limits available to the Insureds on the date of the Accident;

As consideration for this payment of $100,000.00, the Undersigned and their counsel represent and stipulate that they have notified any and all potential alleged underinsured motorist coverage carriers, of the $100,000.00 tender made by Allstate on behalf of its Insureds. This notification was made in accordance with and pursuant to the terms and provisions of the North Carolina Financial Responsibility Act, N.C.G.S. § 20-279.21(b)(4). The Undersigned and their counsel further represent and stipulate that more than thirty (30) days have expired since putting the alleged underinsured motorist coverage carriers on notice of the tender

made by Allstate and that no underinsured motorist coverage carrier has advanced the **$100,000.00** tender of Allstate on behalf of its Insureds. It is, therefore, stipulated and agreed that any subrogation rights that may exist in favor of any underinsured motorist coverage carrier against the Insureds have been extinguished as a matter of law;

The Undersigned further acknowledges that should a civil action be instituted in any Court against the Insureds for the purposes of recovering additional money damages against any other person or excess liability or underinsured motorist coverage carrier, said action shall be instituted against the Insureds **in name only**.

In consideration for the foregoing payment, the Undersigned does further expressly covenant and agree that should any civil action or any other lawsuit or litigation arising out of the accident be tried or otherwise be brought to a conclusion and should a Judgment be entered against the Insureds or their Estates, that the amount of **ONE HUNDRED THOUSAND DOLLARS AND 00/100 ($100,000.00)** previously paid shall be credited toward such Judgment;

The Undersigned doES further covenant and agree that should any Judgment entered against the Insureds or their Estates be in excess of the **ONE HUNDRED HOUSAND DOLLARS AND 00/100 ($100,000.00)** which has been paid by Allstate, the Undersigned, their heirs, beneficiaries and assigns will **not** seek to satisfy nor attempt to collect such Judgment in any manner from the Insureds and/or their Estate, their Personal Representatives, Administrators/Administratrix, Executors/ Executrix, any heirs, beneficiaries or assigns, or from Allstate, its predecessors, successors, affiliates, parent companies, assigns, by any means, including, but not limited to, by any form of levy, attachment, lien, execution or other form of encumbrance upon the past, present or future property, holdings or assets (real and personal, tangible and intangible), wages, income, or profits of the Insureds, their Estates, their heirs, beneficiaries or assigns, or from Allstate, or any of its predecessors, successors, affiliates, parent companies, subsidiaries, nor shall the Undersigned, their Estates, heirs, beneficiaries or assigns initiate any proceedings for the enforcement, collection or execution of such Judgment in any other manner against the Insureds, their Estates, heirs, beneficiaries or assigns, his Personal Representatives, Administrators/Administratrix, Executors/Executrix, or Allstate and its predecessors, successors, affiliates, or parent companies;

Nothing in this Agreement, however, shall be deemed to constitute any waiver of nor shall the Undersigned be estopped from pursuing any and all other rights or claims which they may have against any other person or excess liability carrier or underinsured motorist coverage carrier under any Policy under which the Undersigned are entitled to such coverages. All such rights by the Undersigned to pursue such excess liability coverage or underinsured motorist coverage provided by any other insurance carrier are expressly reserved and preserved by this Agreement.

Nothing in this Covenant shall waive nor estop the Undersigned from seeking to enforce any Judgment rendered in any legal action involving the Insureds against any excess liability carrier or underinsured motorist carrier that may afford such coverages to the Undersigned and that may be bound by any such Judgment pursuant to the provisions of North Carolina General Statute § 20-279.21 or other applicable law;

The Undersigned do further covenant and agree that at such time as their rights against any excess liability carrier and/or underinsured motorist carrier shall have been fully and completely adjudicated by final Judgment, settlement or otherwise, and they have recovered such amounts to which they may be entitled by reason of any such excess liability and/or underinsured motorist coverages, any Judgment entered against the Insureds shall be credited with the amount of any payments received by the Undersigned by reason of any such insurance coverages and that said Judgment will be marked **"Paid in Full and Satisfied"** as to the Insureds and/or his Estate;

The Undersigned hereby declare and represent that the injuries sustained in the accident of November 29, 2016 may be permanent and progressive, and that their recovery therefrom is uncertain and indefinite, and in making this Agreement, it is understood and agreed that the Undersigned rely wholly upon their own judgment, belief and knowledge of the nature, extent and duration of said injuries, and that the Undersigned have not been influenced to any extent whatsoever in making this Agreement by any representations or statements regarding said injuries, or regarding any other matters, made by any persons, firms or corporations.

The Undersigned hereby represent, as a material inducement to cause the persons herein identified to enter into this resolution of this claim, that any liens outstanding in favor of any health or medical care provider, employer, health benefit insurer, health benefit plan, governmental agency and ERISA benefit provider, as well as any Federal and State government employee health benefit/insurance provider, which would prevent the direct payment to the Undersigned of the settlement proceeds herein set forth, will be satisfied out of the proceeds paid under this Covenant. The Undersigned further agree to indemnify and hold harmless the Insureds and Allstate from any claims of lien presented by any of the entities identified above;

This Covenant and the payment made with respect thereto are not to be construed as an admission of liability on the part of the Insureds, by whom fault is denied. It is further stipulated and agreed that this Covenant will not be admissible in any trial against the Insureds. This Covenant contains the entire agreement between the parties thereto, and the terms of the agreement are contractual and not a mere recital.

By her signature below, the Undersigned does affirm that she have carefully read the foregoing Covenant that she understands the contents thereof, and sign the same as her own free act.

Signed and sealed this 23rd day of October , 2017.

Dawn H. Byrd

Dawn Byrd, Claimant

**WITNESSED BY:**

Stanley F. Hammer, Attorney
for Claimant

STATE OF NORTH CAROLINA

COUNTY OF _Guilford_   ~~Randolph~~ *SMQ*

    I, a Notary Public of ~~the above~~ County and State, certify that Dawn Byrd personally appeared before me this day and acknowledged the execution of the foregoing instrument.

    Witness my hand and official seal this the _23rd_ day of _October_____, 2017.

_Sharon M. Queen_____
            Notary Public

My Commission Expires: _1-15-2022_



SHARON M. QUEEN
NOTARY
PUBLIC
RANDOLPH COUNTY, N.C.

1

# EXHIBIT "F"



USAA General Indemnity Company

# CLAIM
# INFORMATION

STEPHANIE ANDERSON
BURTON, SUE AND ANDERSON
PO BOX 20083
GREENSBORO NC 27420-0083

## Your letter dated 12/13/2017

December 20, 2017

Dear Stephanie Anderson,

I'm writing regarding the claim referenced below.

| | |
|---|---|
| USAA policyholder: | David W Harrelson |
| Claim number: | 029534991-002 |
| Date of loss: | November 29, 2016 |
| Loss location: | Lexington, North Carolina |
| Your client: | Carlton Cranford |

Thank you for your letter dated 12/13/2017. USAA has reviewed this coverage issue and your letter and maintains its assessment that there is no coverage under this policy for this loss. Exclusions B.1.a. and B.2.b. both appear to apply to this loss and preclude coverage. *Griswold vs Integon General* has very similar issues as this claim and the court decided that the Exclusions applied. If you would like to provide me with any legal authority showing that our assessment of the policy language read in conjunction with North Carolina law is not correct, please send it to me as soon as possible.

At this time, USAA is not providing coverage or defense for this claim as there is no coverage under the policy. Please handle the suit accordingly.

You may submit correspondence or questions to me using one of the following options:

| @ | **Email:** | Email us at 3vvqlk2wmzjb@claims.usaa.com. Do not send private information via this channel. |
|---|---|---|
| ✉ | **Address:** | USAA Claims Department P.O. Box 33490 San Antonio, TX 78265 |
| 🖶 | **Fax:** | 1-800-531-8669 |
| ☎ | **Phone:** | 210-531-8722, x44082 |

029534991 - DM-04664 - 2 - 7932 - 48

54577-1217

Sincerely,

Dan Hawkins, SCLA
Southeast Regional Office
USAA General Indemnity Company

cc : Stephanie Anderson

029534991 - DM-04664 - 2 - 7932 - 48                                54577-1217

Thank you for agreeing to accept messages and documents electronically for the duration of this claim. Here are the terms and conditions for electronic communication with you.

USAA Reference Number: 029534991 - 2

Dear Stephanie Anderson,


Please see attached for additional information.

You may reply to this message. If you need to provide documentation, you can attach documents to your email. We cannot guarantee the security of any medical, financial or other personally identifiable information sent by email.

[07932:048:91]

USAA, 9800 Fredericksburg Road, San Antonio, Texas, 78288

# EXHIBIT "G"

STATE OF NORTH CAROLINA

DAVIDSON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 02535

FILED

2018 JAN 23 P 3:59

DAWN HAYES BYRD,
                    Plaintiff,

        v.

SHERRI HARRELSON, DAVID
HARRELSON and CARLTON PAUL
CRANFORD,
                    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

ENTRY OF DEFAULT
AS TO DEFENDANT SHERRI HARRLESON

WHEREAS, IT HAS BEEN MADE TO APPEAR to the Clerk of Superior Court of Davidson County, that Defendant Sherri Harrelson, has failed to plead to the Complaint in the above-entitled action within apt time or is otherwise subject to default judgment as provided by these rules or by statute and that fact is made to appear by affidavit or otherwise

NOW, THEREFORE, the default of Defendant Sherri Harrelson is hereby entered against said Defendant in this action as provided by Rule 55 of the North Carolina Rules of Civil Procedure.

This the 23 day of January 2018.

Asst _____
CLERK OF SUPERIOR COURT

1

STATE OF NORTH CAROLINA

DAVIDSON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 02535

2018 JAN 23  P 3 59

DAWN HAYES BYRD,
                    Plaintiff,

         v.

SHERRI HARRELSON, DAVID
HARRELSON and CARLTON PAUL
CRANFORD,
                    Defendants.

)
)
)
)
)
)
)
)
)
)
)

ENTRY OF DEFAULT
AS TO DEFENDANT DAVID HARRLESON

WHEREAS, IT HAS BEEN MADE TO APPEAR to the Clerk of Superior Court of Davidson County, that Defendant David Harrelson, has failed to plead to the Complaint in the above-entitled action within apt time or is otherwise subject to default judgment as provided by these rules or by statute and that fact is made to appear by affidavit or otherwise

NOW, THEREFORE, the default of Defendant David Harrelson is hereby entered against said Defendant in this action as provided by Rule 55 of the North Carolina Rules of Civil Procedure.

This the 23 day of January 2018.

_____
Asst  CLERK OF SUPERIOR COURT

1

# EXHIBIT "H"



 USAA General Indemnity Company

# CLAIM INFORMATION

STEPHANIE ANDERSON
BURTON, SUE AND ANDERSON
PO BOX 20083
GREENSBORO NC 27420

 **Your letter dated 2/7/2018**

February 27, 2018

Dear Stephanie Anderson,

I'm writing regarding the claim referenced below.

| | |
|---|---|
| **USAA policyholder:** | David W Harrelson |
| **Claim number:** | 029534991–002 |
| **Date of loss:** | November 29, 2016 |
| **Loss location:** | Lexington, North Carolina |
| **Your clients:** | David and Sheri Harrelson, Carlton Cranford |

Thank you for your letter dated 02/07/2018. As stated in previous letters, our position remains that Exclusion B.1. and B.2. apply to this loss and therefore there is no coverage or duty to defend. Please handle the suit accordingly.

You may submit correspondence or questions to me using one of the following options:

| | | |
|---|---|---|
| ✉ | **Address:** | USAA Claims Department<br>P.O. Box 33490<br>San Antonio, TX 78265 |
| 📠 | **Fax:** | 1-800-531-8669 |
| 📞 | **Phone:** | 210-531-8722, x44082 |

Sincerely,

Dan Hawkins, SCLA
Southeast Regional Office
USAA General Indemnity Company

029534991 - DM-04664 - 2 - 7932 - 48

54577-1217

# EXHIBIT "I"



# WYATT EARLY HARRIS WHEELER
## ATTORNEYS AND COUNSELLORS AT LAW

STANLEY F. HAMMER, ATTORNEY
AND DRC CERTIFIED MEDIATOR

WRITER'S DIRECT NUMBER
336.819.6013

WRITER'S DIRECT FACSIMILE
336.819.6073

19 JULY 2018

E-MAIL
SHAMMER@WEHWLAW.COM

**Sent Via Fax:  800-531-8669**
**and First Class Mail**
Daniel Hawkins
USAA Claims
9800 Fredericksburg Road
San Antonio, TX 78240

Re:  Our Client: · Dawn Hayes Byrd
    Policyholder: David W. Harrelson
    Reference #: 029534991-2
    Loss Location: Lexington, North Carolina
    Date of Loss: November 29, 2016

Dear Mr. Hawkins:

Please recall that USAA has declined coverage to the Harrelsons in the referenced matter.  As you know, we have filed an action on behalf of Ms. Byrd, and I understand that USAA is continuing to deny coverage for their insured.  Accordingly, the Harrelsons employed counsel.  We will soon be taking depositions in this case, and have thus far conducted some discovery as well.

I write to inform you that for the next 10 days, I am willing to accept the policy limits of $50,000.00 in exchange for a release.  In the absence of a response, I will proceed to trial, and if successful, seek to collect a judgment against your insureds, which I am confident will be well in excess of the amount of the USAA policy.

Thank you.

1912 EASTCHESTER DRIVE SUITE 400, HIGH POINT, NC 27265 OFFICE TELEPHONE (336) 884-4444    2276316

Page 2
Daniel Hawkins
19 July 2018

Sincerely,

Stanley F. Hammer
SFH/smq

Enclosures

c:      Dawn Hayes Byrd
        Stephanie Anderson

# Burton, Sue & Anderson, L.L.P.

### ATTORNEYS AND COUNSELORS AT LAW

GARY K. SUE
WALTER K. BURTON ‡*
STEPHANIE W. ANDERSON ‡
C. MICHAEL DAY ‡
CAM A. BORDMAN
REGAN GATLIN ENGLISH

419 N. ELM STREET
POST OFFICE BOX 20083
GREENSBORO, NORTH CAROLINA 27420
Bsallp.org

TELEPHONE
(336) 275-0512
FACSIMILE
(336) 378-1390

‡ALSO LICENSED IN VIRGINIA
*CERTIFIED MEDIATOR

August 23, 2018

Mr. Brian Shipwash
Clerk of Superior Court
  Of Davidson County
Post Office Box 1064
Lexington, NC 27293

Re:  David Harrelson and Sheri Harrelson v.
     USAA; 18 CvS
     Our File No. 1946

Dear Mr. Shipwash:

Enclosed please find the original and one copy of a Complaint for filing and Civil Summons to be issued in the above-captioned matter. I would appreciate it if you would issue the Civil Summons and return the original and copy to me in the stamped, self-addressed envelope enclosed for that purpose.

I have also enclosed our firm check in the amount of $200.00 for your filing fee.

Thank you for your attention to the above.

With warm regards, I am

Very truly yours,

Stephanie W. Anderson
swa@bsa-llp.com

SWA/lea
1946CF08.23.18
Enclosures

NORTH CAROLINA

DAVIDSON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CvS 1847

DAVIDSON COUNTY
FILED

SEP 25 2018

AT 2:12 O'CLOCK P M
BY
CLERK OF SUPERIOR COURT

David W. Harrelson and Sheri Harrelson,

    Plaintiffs,

V.

USAA General Indemnity Company,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

**AFFIDAVIT OF SERVICE OF**
**USAA GENERAL INDEMNITY COMPANY**

I, Stephanie W. Anderson, being first duly sworn, hereby depose and say that I am an attorney licensed to practice law in the State of North Carolina and represent the Plaintiffs in the captioned action. This Affidavit is made upon my personal knowledge.

1. Copies of the Summons and Complaint in the captioned action were deposited with the United States Postal Service via First-Class mail, for mailing and addressed as follows:

    USAA General Indemnity Company
    c/o NC Department of Insurance
    1201 Mail Service Center
    Raleigh, NC 27699-1201

2. Copies of the Summons and Complaint were in fact duly delivered to USAA General Indemnity Company, c/o NC Department of Insurance, on September 13, 2018, via United States Postal Service First-Class mail, pursuant to Rule 4(j)(1)(c) of the North Carolina Rules of Civil Procedure, and as evidenced by the genuine registry receipt which is attached hereto as **"Exhibit A"**.

This the 24th day of September, 2018.

                                  _____
                                  Stephanie W. Anderson, Attorney for
                                  Plaintiffs

OF COUNSEL:
Burton, Sue & Anderson, L.L.P.
Post Office Box 20083
Greensboro, NC 27420
Telephone: (336) 275-0512
Facsimile: (336) 378-1390
1946PF09.24.18

**NORTH CAROLINA**

**GUILFORD COUNTY**

I, Laura E. Almaguer, a Notary Public of Guilford County, North Carolina, do hereby certify that Stephanie W. Anderson personally appeared before me this day and acknowledged the execution of the foregoing instrument.

Witness my hand and notarial seal this the 24th day of September, 2018.

_____
              Notary Public

My commission expires: _Nov. 1, 2022_.

NOTARY PUBLIC
LAURA E. ALMAGUER
GUILFORD COUNTY, NC
My Commission Expires Nov. 01, 2022

# EXHIBIT "A"


David W. Harrelson and Sheri Harrelson

     vs.

USAA General Indemnity Company

    I, Courtney H Ethridge, a Special Deputy duly appointed for the purpose, do hereby accept service of the **Civil Summons** of Plaintiff's David W. Harrelson and Sheri Harrelson and adding USAA General Indemnity Company as a Defendant, and acknowledge receipt of a copy of the same, together with a copy of the **Complaint**, under the provision of the North Carolina General Statute Section 58-16-30 as process agent for USAA General Indemnity Company.

    This the 13th day of September, 2018.

                MIKE CAUSEY
                Commissioner of Insurance

                Courtney H Ethridge
                Special Deputy for
                Service of Process

NORTH CAROLINA

DAVIDSON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 1847

DAVIDSON COUNTY
FILED

OCT 09 2018

AT 11:36 O'CLOCK A M
BY
CLERK OF SUPERIOR COURT

DAVID W. HARRELSON and )
SHERI HARRELSON, )
           Plaintiffs, )
            )
v. )
            )
USAA GENERAL INDEMNITY )
COMPANY, )
           Defendant. )
_____ )

**DAWN BYRD'S
MOTION TO INTERVENE**

Now Comes Dawn Byrd, through counsel, and moves the Court pursuant to N.C. Gen. Stat. §1A-1, Rule 24, to intervene in the above entitled action, and shows the following:

1.     At the time of the accident, Carlton Cranford was residing at the home of his mother, Sherri Harrelson, and his stepfather, David Harrelson, whose vehicles were insured under the Harrelson USAA Policy, attached as Exhibit B to Plaintiffs Harrelsons' complaint in this matter.

2.     On 22 March 2017 the undersigned, as attorney for Byrd, sent a letter of representation to USAA insurance, the automobile liability carrier for Plaintiffs Sherri and David Harrelson, and pursuant to N.C. Gen. Stat. 58-3-33 requested information regarding insurance policy limits. USAA, through its representative, Dan Hawkins, refused to provide information requested, stating that the Harrelson's USAA policy does not cover the accident. The undersigned reiterated the request on 28 March 2017, and again on 12 April 2017 and 24 April 2017—and never received an adequate response.

1

2308424

3.    Thereafter, Byrd entered into a settlement agreement with Allstate Insurance Company and Brent Cranford, Carlton's biological father with whom Carlton sometimes resided. The settlement with AllState was reflected in a Covenant Not to Enforce Judgment which is attached to Plaintiff's complaint in this action; the covenant reserves Byrd's right to proceed against the Harrelsons.

4.    On 27 November 2017 the undersigned filed a lawsuit against Sherri and David Harrelson, seeking damages resulting from the accident under the family purpose doctrine.

5.    The Harrelson's USAA policy, which is attached to Plaintiff's Complaint as Exhibit B, provides in pertinent part:

"**Insured**" as used in this Part means:

1.    You or any **family member** for the ownership, maintenance or use of any auto or **trailer.**
2.    Any person using **your covered auto**;
3.    **For your covered auto**, any person or organization, but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

Exclusions to the policy provide in pertinent part:

B.    We do not provide Liability Coverage for the ownership, maintenance or use of:

2.    Any vehicle, other than **your covered auto**, which is:

a.    owned by any family member; or
b.    furnished for the regular use of any family member.

However, this exclusion (B.2.) does not apply to your maintenance or use of any vehicle which is:

a.    owned by a **family member**; or

2

2308424

b.    furnished for the regular use of a **family member**.

6.    Based on the foregoing policy and its exclusions, there is no question but that USAA has a duty to defend and indemnify the Harrelsons under the policy of insurance it issued to The Harrelsons, and that it has failed to honor the provisions of that policy, including the exceptions to the exclusion (as set forth on Page 8 of 28 of the USAA policy attached to Plaintiff's Complaint).

7.    Movant anticipates that upon completion of the lawsuit against The Harrelsons, Movant will obtain and seek to collect a judgment against the Harrelsons.

8.    Although it is not necessary for a one seeking permissive intervention to have a direct or personal pecuniary interest in the subject matter of the lawsuit, *In re Scearse*, 81 N.C. App. 531, 345 S.E.2d 494, *rev. denied*, 318 N.C. 415, 349 S.E.2d 589 (1986) *See also* 1 G. Wilson, NORTH CAROLINA CIVIL PROCEDURE §24-4 (3rd Ed., Matthew Bender 2017), in the present case Byrd has a direct interest in the outcome of this case.

9.    Additionally, Bryd is also entitled to bring an action against USAA for Unfair and Deceptive Trade Practices pursuant to N.C. Gen. Stat. §75-1.1, based on USAA's unfair settlement practices pursuant to N.C. Gen. Stat. 58-63-15 as USAA's repeated failure to provide information as required by N.C. Gen. Stat. 59-3-33 regarding policy limits establishes frequency of conduct amounting to a pattern of activity or "General Business Practice."

    WHEREFORE, Dawn Byrd moves to intervene in this matter, and has attached a proposed pleading.

3

2308424

THIS the 4th day of October 2018.

Stanley F. Hammer
Wyatt Early Harris Wheeler LLP
P.O. Drawer 2086
High Point, NC 27261
Telephone: 336-819-6012
Facsimile: 336-819-6072
Email: Shammer@wehwlaw.com
*Attorney for Movant Dawn Byrd*

4

2308424

## CERTIFICATE OF SERVICE

I, Stanley F. Hammer, hereby certify that on this day, I served a copy of the foregoing **Motion to Intervene** upon counsel of record by first class mail by depositing a copy thereof enclosed in a postpaid and properly addressed wrapper, in a post office or official depository under the exclusive care and custody of the United States Postal Service, addressed as follows:

Stephanie W. Anderson
Burton, Sue & Anderson, L.L.P.
P.O. Box 20083
Greensboro, NC 27420
*Attorney for Plaintiffs Sherri Harrelson & David Harrelson*

USAA General Indemnity Company
c/o NC Department of Insurance
1201 Mail Service Center
Raleigh, NC 27699

This the _____ day of October 2018.

WYATT EARLY HARRIS WHEELER LLP
*Attorneys for Movant Dawn Byrd*

By: _____
Stanley F. Hammer
For the Firm
State Bar No.: 12421

OF COUNSEL:

WYATT EARLY HARRIS WHEELER LLP
P.O. Drawer 2086
High Point, NC 27261
Telephone: 336-819-6013
Facsimile: 336-819-6063
Email: shammer@wehwlaw.com

5

2308424

NORTH CAROLINA

DAVIDSON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 1847

DAVID W. HARRELSON and )
SHERI HARRELSON, )
          Plaintiffs, )
           )
      v. )
           )
USAA GENERAL INDEMNITY )
COMPANY, )
          Defendant. )
           )
    And )
           )
DAWN BYRD, )
    Intervening Plaintiff,)
           )
      v. )
           )
USAA GENERAL INDEMNITY )
COMPANY, )
          Defendant. )
_____ )

**INTERVENOR DAWN BYRD'S COMPLAINT
AND MOTION TO STAY PROCEEDINGS**

INTERVENOR, Dawn Byrd, by and through the undersigned counsel, and files the following Complaint against USAA General Indemnity Company ("USAA"):

1.     Intervenor Plaintiff, Dawn Byrd, is a citizen and resident of Davidson County, North Carolina.

2.     Defendant, USAA General Indemnity Company, is an insurance company, licensed to do business in the State of North Carolina and doing business in the state of North Carolina.

3.     Subject matter jurisdiction is proper in this Court.

1

2310154

4. This Court has personal jurisdiction of Defendant.

5. Venue is proper in Davidson County, North Carolina.

## FACTUAL BACKGROUND

6.     On 29 November 2016 Carlton Cranford ("Carlton"), a minor, was operating a 2001 Jeep bearing VIN# 1J4FA49S81P331026 ("The Jeep") owned by his mother Sherri Harrelson. While traveling on Highway 47, Carlton crossed the center line of the road and collided with a vehicle operated by Intervenor Plaintiff, Dawn Byrd. As a result of this accident ("the accident") Byrd sustained significant injuries.

7.     At the time of the accident, Carlton was residing at the home of his mother, Sherri Harrelson and his stepfather, David Harrelson, whose vehicles were insured under the Harrelson USAA Policy, attached as Exhibit B to Plaintiffs Harrelson's complaint in this matter.

8.     On 22 March 2017 the undersigned, as attorney for Byrd, sent a letter of representation to USAA insurance, the automobile liability carrier for Sherri and David Harrelson, and pursuant to N.C. Gen. Stat. 58-3-33, requested information regarding insurance policy limits. USAA, through its representative, Dan Hawkins, refused to provide information requested, writing in an e-mail that the Harrelson's USAA policy does not cover the accident. The undersigned reiterated the request on 28 March 2017, and again on 12 April 2017 and 24 April 2017, yet USAA continued to resist providing information as to insurance policy limits.

9.     The Harrelson's USAA policy, which is attached to Harrelson's Complaint as Exhibit B, provides in pertinent part:

2

**"Insured"** as used in this Part means:

1. You or any **family member** for the ownership, maintenance or use of any auto or **trailer.**
2. Any person using **your covered auto;**
3. **For your covered auto**, any person or organization, but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

Exclusions to the policy provide in pertinent part:

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

2. Any vehicle, other than **your covered auto**, which is:

a. owned by any family member; or
b. furnished for the regular use of any family member.

However, this exclusion (B.2.) does not apply to your maintenance or use of any vehicle which is:

a. owned by a **family member**; or
b. furnished for the regular use of a **family member**.

10.   Based on the foregoing policy and its exclusions, Defendant USAA had a duty to defend and indemnify the Harrelsons under its policy of insurance, and was therefore obligated to provide to Intervenor Plaintiff the insurance policy limits pursuant to N.C Gen. Stat. § 58-3-33, which provides in pertinent part:

(a)   A person who claims to have been physically injured or to have incurred property damage where such injury or damage is subject to a policy of nonfleet private passenger automobile insurance may request by certified mail directed to the insurance adjuster or to the insurance company (Attention Corporate Secretary) at its last known principal place of business that the insurance company provide information regarding the policy's limits of coverage under the applicable policy. Upon receipt of such a request, which shall include the policyholder's name, and, if available, policy number, the insurance company shall notify that person within 15 business days, on a form developed by the Department, that the insurer is required to provide this information prior to litigation only if the person seeking the information satisfies all of the following conditions:

3

2310154

(1)     The person seeking the information submits to the insurer the person's written consent to all of the person's medical providers to release to the insurer the person's medical records for the three years prior to the date on which the claim arose, as well as all medical records pertaining to the claimed injury.

(2)     The person seeking the information submits to the insurer the person's written consent to participate in mediation of the person's claim under G.S. § 7A-38.3A.

(3)     The person seeking the information submits to the insurer a copy of the accident report required under G.S. § 20-166.1 and a description of the events at issue with sufficient particularity to permit the insurer to make an initial determination of the potential liability of its insured.

(b)     Within 30 days of receiving the person's written documents required under subsection (a) of this section, the insurer shall provide the policy limits.

(c)     Disclosure of the policy limits under this section shall not constitute an admission that the alleged injury or damage is subject to the policy.

(d)     This section does not apply to claims seeking recovery for medical malpractice or claims for which an insurer intends to deny coverage under any policy of insurance.

11.     As set forth herein, Defendant failed to provide the documents requested within 30 days of receiving Plaintiff Byrd's request, which met the requirements of the N.C.Gen. Stat.§ 58-3-33.

12.     Defendant may not avail itself of Gen. Stat. § 53-3-33(d) as there is no legitimate basis from for Defendant USAA to deny coverage under the claim set forth by Dawn Byrd.

13.     USAA's repeated failure to comply with the request of Byrd for insurance policy limits amounted to a pattern or general business practice, which was unfair, deceptive, unlawful and in violation of N.C. Gen. Stat. § 58-63-15, and the Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, et seq.

4

2310154

14.     As a direct and proximate result of Defendant USAA's failure to comply with North Carolina law, and failure to provide insurance policy limits, Byrd had incurred damages in an amount to be determined by a jury.

15.     Because the actions of USAA were made in bad faith, were fraudulent, and made with a conscious and intentional disregard of and indifference to the rights and safety of Byrd, she is entitled to an award of punitive damages as determined at trial of this matter.

16.     Additionally, Intervenor Plaintiff is entitled to reasonable attorneys' fees pursuant to N.C. Gen. Stat. §75-16.1, for Plaintiff Byrd has made repeated demands on USAA to resolve this matter, and USAA has declined to respond.

## MOTION TO STAY PROCEEDINGS

NOW Comes Intervenor Plaintiff, Dawn Byrd, and moves to stay this action until after resolution of *Dawn Hayes Byrd v. Sherri Harrelson, David Harrelson and Carlton Paul Cranford*, 17 CVS 2335 (Davidson County Superior Court) ("The Pending Action"). In support of this motion, Intervenor Plaintiff shows the following:

1.     Intervenor's Complaint in The Pending Action is based on personal injuries Intervenor sustained in an automobile accident on 29 November 2016 in which Carton Cranford was operating a vehicle owned by his mother Sheri Harrelson, at a time when Carlton Cranford was residing with his mother and stepfather, David Harrelson.

2.     The Harrelsons have demanded that USAA defend and indemnify them in connection with The Pending Action, and USAA's refusal to defend and indemnify is the basis for this action.

2310154

3.     Because damages of both Intervenor Plaintiff and the Harrelsons will be determined by the outcome of The Pending Action, judicial economy dictates the wisdom of staying this action until The Pending Action or personal injury lawsuit has been completed.

**WHEREFORE,** Intervenor Plaintiff, Dawn Byrd, requests the following relief.

1.     That the Court stay this action pending the resolution of *Dawn Hayes Byrd v. Sherri Harrelson, David Harrelson and Carlton Paul Cranford*, 17 CVS 2335;

2.     That upon trial of this action the Court award damages to Intervenor Plaintiff based upon unfair trade practices;

3.     That upon the trial of this matter the Court award punitive damages;

4.     That the Court tax Defendant USAA with Intervenor- Plaintiff's reasonable attorney's fees and costs;

5.     That the Court order such other relief as permitted by law.

THIS the ___ day of October 2018.

_____
Stanley F. Hammer
Wyatt Early Harris Wheeler LLP
P.O. Drawer 2086
High Point, NC 27261
Telephone:  336-819-6012
Facsimile:  336-819-6072
Email:  Shammer@wehwlaw.com
*Attorney for Intervenor Plaintiff Dawn Byrd*

2310154