IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DAVID W. HARRELSON and SHERI HARRELSON, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:18-cv-862 |
| USAA GENERAL INDEMNITY COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, Chief District Judge.

This is an insurance coverage dispute. Plaintiffs contend that David Harrelson's policy with Defendant USAA General Indemnity Company ("USAA") covers liability for an accident involving an automobile owned by his wife, Sheri Harrelson, and driven by her son. The Harrelsons allege breach of contract, breach of duty of good faith and fair dealing, unfair and deceptive trade practices, and unfair claims settlement practices. Before the court is USAA's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Doc. 20.) The motion is fully briefed (Docs. 21, 22, 23) and ready for decision. For the reasons that follow, the motion will be granted and the action will be dismissed.

I.  **BACKGROUND**

The allegations of the complaint, taken in the light most

favorable to the Harrelsons, show the following:

In November 2016, Sheri Harrelson's son from a prior marriage, Carlton Cranford ("Carlton"), was involved in a car accident with Dawn Byrd while driving a Jeep. (Doc. 3 ¶ 7.) At the time, Carlton lived with both his mother, Sheri, who had married David Harrelson, and his biological father, Brent Cranford. (Id. ¶ 8.) The Jeep was titled in both Sheri Harrelson's and Brent Cranford's names, because they shared the cost purchasing it. (Id. ¶ 9.) The Jeep was insured by Allstate Insurance ("the Allstate Policy"), and Sheri Harrelson paid the Allstate Policy premiums. (Id. ¶ 10.) At the time of the accident, David Harrelson insured two other automobiles under a policy with USAA ("the USAA Policy"). (Id. ¶ 11; Doc. 3-2.) The USAA Policy identified David Harrelson as the "named insured" and listed him, Sheri Harrelson, and Carlton Cranford as "operators." (Doc. 3-2 at 6.) At the time of the accident, Carlton was the sole operator of the Jeep and used it as his own. (Doc. 3 ¶ 27.) Neither the Harrelsons nor Brent Cranford used the Jeep on a regular basis. (Id.)

As a result of the accident, Byrd sued the Harrelsons and Carlton in state court seeking damages in excess of $70,000 for personal injuries. (Id. ¶ 12; Doc. 3-4.) Byrd brought a separate cause of action against the Harrelsons pursuant to the family

purpose doctrine[1] on the grounds that at the time of the accident Carlton was driving the Harrelsons' son to school. (Doc. 3 ¶ 13.) Allstate tendered its available coverage to Byrd in exchange for a covenant not to enforce any judgment against Brent and Carlton Cranford. (Id. ¶ 14; Doc. 3-5.)

After notifying USAA of Byrd's suit against them, the Harrelsons wrote to USAA to demand defense and indemnification for excess coverage. (Doc. 3 ¶¶ 15–16.) USAA refused on the ground that its policy did not cover liability for the accident. (Id. ¶ 17; Doc. 3-6.) Following USAA's refusal, Byrd obtained entry of default against the Harrelsons. (Doc. 3 ¶ 18; Doc. 3-7.) The Harrelsons hired counsel, had the entry of default set aside, and again demanded that USAA defend and indemnify them, which USAA again refused. (Doc. 3 ¶¶ 19–21.) Byrd then offered to settle with USAA, but USAA again declined, citing lack of coverage for the accident. (Id. ¶¶ 22–23; Doc. 3-9.) On August 23, 2018, the Harrelsons filed this lawsuit against USAA in state court. (Doc. 3.) USAA removed the case and filed an answer. (Docs. 1, 6). In January 2019, Byrd filed a motion to intervene (Doc. 12), which

---

[1] The family purpose doctrine "imposes liability upon the owner or person with ultimate control of a motor vehicle for its negligent operation by another when it is shown (1) that the operator was a member of his family . . . and was living in his home, (2) that the vehicle was owned, provided and maintained for the general use, pleasure and convenience of his family and (3) that the vehicle was being so used by a member of his family at the time of the accident with his express or implied consent." Williams v. Wachovia Bank & Tr. Co., 233 S.E.2d 589, 592 (N.C. 1977).

3

was denied (Doc. 18).

The pertinent provisions of the USAA Policy provide:

**DEFINITIONS**:

Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household. . . .

"We," "us" and "our" refer to the Company providing this insurance.

\* \* \*

**"Family member"** means a person related to you by blood [or] marriage . . . who is a resident of your household. . . .

\* \* \*

**"Your covered auto"** means: (1) Any vehicle shown in the Declarations. . . .

(Doc. 3-2 at 22.)

\* \* \*

**INSURING AGREEMENT**

We will pay damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an auto accident. . . . We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy.

**"Insured"** as used in [the Insuring Agreement] means:

1. You or any **family member** for the ownership, maintenance or use of any auto or trailer.

4

2. Any person using **your covered auto**. . . .

(Id. at 24.)

* * *

**EXCLUSIONS**

. . .

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any vehicle, other than **your covered auto**, which is:

    a. owned by you; or

    b. furnished for your regular use.

2. Any vehicle, other than **your covered auto**, which is:

    a. owned by any **family member;** or

    b. furnished for the regular use of any **family member.**

However, this exclusion (B.2.) does not apply to your maintenance, or use of any vehicle which is:

    a. owned by a **family member;** or

    b. furnished for the regular use of a **family member.**

(Id. at 26.)

The Harrelsons argue that the USAA Policy covers Carlton's Jeep accident. USAA maintains that the accident falls squarely within exclusions to the USAA Policy, and the company therefore has no obligation to defend or indemnify the Harrelsons in Byrd's

lawsuit.

**II. ANALYSIS**

    **A.    Motion for Judgment on the Pleadings**

The standard of review governing motions for judgment on the pleadings is identical to that employed on motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014). A Rule 12(c) motion differs from a 12(b)(6) motion based on the materials the court may consider in testing the complaint's sufficiency -- under Rule 12(c), the court may consider the complaint, the answer, and documents incorporated by reference into these pleadings. Mendenhall v. Hanesbrands, Inc., 856 F. Supp. 2d 717, 724 (M.D.N.C. 2012). "Specifically, exhibits 'integral to and explicitly relied on in the complaint' may be reviewed, provided their authenticity is not in question." Colin v. Marconi Commerce Sys. Emps. Ret. Plan, 335 F. Supp. 2d. 590, 596 (M.D.N.C. 2004) (quoting Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999)). In this case, the USAA Policy can be considered because it is specifically referenced in, and attached to, the Harrelsons' complaint. (Doc. 3.)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In considering a Rule 12(b)(6) motion, a court first "separates factual allegations from allegations not entitled to the assumption of truth." Sauers v. Winston-Salem/Forsyth Cty. Bd. of Educ., 179 F. Supp. 3d 544, 550 (M.D.N.C. 2016) (citing Iqbal, 556 U.S. at 681).  Conclusory allegations and allegations that are simply a "formulaic recitation of the elements" are not entitled to the assumption of truth.  Id. (quoting Iqbal, 556 U.S. at 681).  The court then determines "whether the factual allegations, which are accepted as true, 'plausibly suggest an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 681).  A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable," demonstrating "more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556–57).

**B. USAA Policy**

USAA does not dispute that, barring the application of any exclusionary provision of the USAA Policy, the company would be obliged to provide coverage for the accident.[2]  USAA argues, however, that the Harrelsons' allegations fail as a matter of law

---

[2] The USAA Policy states that the company "will pay damages for **bodily injury** . . . for which any **insured** becomes legally responsible because of an auto accident." (Doc. 3-2 at 24.)  The Harrelsons and Carlton are "insureds" within the USAA Policy's definitions.  (Id.)

7

because liability for damages stemming from Carlton's accident in the Jeep is barred by two coverage exclusions. (Doc. 21 at 9.) The Harrelsons argue that David Harrelson is a named insured under the USAA Policy and is covered under the family purpose doctrine. They also argue that their complaint does not allege that the Jeep was used regularly by Carlton, thus preventing application of one of the USAA Policy exclusions.

North Carolina law governs the interpretation of the USAA Policy. (Doc. 21 at 3; Doc. 22 at 4.) See Fortune Ins. Co. v. Owens, 526 S.E.2d 463, 466 (N.C. 2000); N.C. Gen. Stat. § 58-3-1. Under North Carolina law, the "interpretation of language used in an insurance policy is a question of law, governed by well-established rules of construction." N.C. Farm Bureau Mut. Ins. Co. v. Mizell, 530 S.E.2d 93, 95 (N.C. Ct. App. 2000) (citing Allstate Ins. Co. v. Chatterton, 518 S.E.2d 814, 816 (N.C. Ct. App. 1999)). If the insurance policy is "ambiguous and reasonably susceptible to more than one interpretation," the court must construe the policy in favor of the Harrelsons and against USAA. Id. (citing Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co., 172 S.E.2d 518, 522 (N.C. 1970)); see, e.g., Wash. Hous. Auth. v. N.C. Hous. Auths. Risk Retention Pool, 502 S.E.2d 626, 628 (N.C. Ct. App. 1998) (describing that this presumption exists because "the insurer prepares the policy and chooses the language"). But if the language is clear and unambiguous, the court must enforce

the policy as written. Mizell, 530 S.E.2d at 95; see also Westchester Fire, 172 S.E.2d at 522. The parties may not invite ambiguity merely by claiming that the policy language is unclear; rather, "[n]on-technical words are to be given their meaning in ordinary speech unless it is clear that the parties intended the words to have a specific technical meaning." Mizell, 530 S.E.2d at 95 (citing Chatterton, 518 S.E.2d at 817). Where the policy "defines a term, then that definition is to be applied," even if a more colloquial meaning is normally used. Nationwide Mut. Ins. Co. v. Mabe, 444 S.E.2d 664, 667 (N.C. Ct. App. 1994).

When deciding whether an insurer has a duty to defend, a court must compare the complaint with the insurance policy to determine if the complaint alleges facts that appear to fall within the scope of the insurance coverage. Washington Hous. Auth., 502 S.E.2d at 629 (quoting Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 323 S.E.2d 726, 730 (N.C. Ct. App. 1984)). Thus, the Harrelsons have a right to a defense if their allegations evidence a "'*potential* that liability will be established within the insurance coverage' and the complaint contains 'no allegation of facts which would *necessarily* exclude coverage.'" Id. (quoting Waste Mgmt. of Carolinas, 323 S.E.2d at 730); See also Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, LLC, 692 S.E.2d 605, 611 (N.C. 2010) ("In determining whether an insurer has a duty to defend, the facts as alleged in the complaint are to be taken as

9

true and compared to the language of the insurance policy. If the insurance policy provides coverage for the facts as alleged, then the insurer has a duty to defend.").

With this legal framework in mind, the court turns to each of the policy exclusions on which USAA relies.

### 1. Owned Auto Exclusion (9.B.1.a)

USAA first argues that paragraph 9.B.1.a. (the "Owned Auto Exclusion") applies and prevents liability coverage for Carlton's accident. This exclusionary provision reads:

> B. We do not provide Liability Coverage for the ownership, maintenance or use of:
>
> 1. Any vehicle, other than **your covered auto**, which is:
>
>    a. owned by you;

(Doc. 3-2 at 26.) USAA argues that, because the USAA Policy defines "you" and "your" as the "named insured" (David Harrelson) and the spouse of the "named insured" (Sheri Harrelson), the Owned Auto Exclusion must be read to mean that the Jeep is not covered by USAA's Policy. Under the policy, the "covered autos" are the Harrelsons' two other vehicles, a 2002 Nissan and a 2013 Hyundai. (Id. at 6, 22.) According to USAA, therefore, the Jeep, which Sheri owned with her prior husband, Brent Cranford (Doc. 3 ¶ 9), was not covered because it is a vehicle owned by an insured and is not one of the "covered autos." In support of its understanding of the Owned Auto Exclusion, USAA cites to a North Carolina Court

of Appeals case with similar facts.

In Griswold v. Integon General Insurance Corporation, a son lived with his mother and stepfather. 560 S.E.2d 861, 862 (N.C. Ct. App. 2002). The family owned three vehicles, one of which was provided to the son for his use. Id. Following advice from their insurance agent to avoid higher rates, the family took out two insurance policies for their vehicles. One policy covered the two vehicles that the mother and stepfather used, and a second policy issued by a different insurance company covered the vehicle that the son used. See id. at 862-63. As here, the son, while driving the car that only he used, got into an accident and a lawsuit followed. See id. at 863. The family sought to compel the first insurance company -- whose policy covered the two vehicles that the mother and stepfather drove -- to provide excess liability insurance coverage, and the insurance company claimed its policy did not cover liability for the accident. Id.

The insurance policy in Griswold is nearly identical to the USAA Policy in this case. Indeed, the two coverage exclusions that the company in Griswold relied upon in support of its argument are verbatim copies of the coverage exclusions at issue here. Id. at 864. And, just as here, the Griswold policy limited the definition of "you" and "your" to named insureds and their spouses, which excluded the son but included the mother and stepfather. See id. The court held that the policy did not obligate the

insurance company to provide coverage for the son's accident, as the policy's exclusions for owned autos and regular use applied. See id. at 864–66.

The Harrelsons argue that Griswold is distinguishable in regard to the Owned Auto Exclusion for two reasons. First, they argue that the case addressed a situation in which the parents were "attempting to avoid paying premiums," which they say is not present here as the Jeep was covered by the Allstate Policy. (Doc. 22 at 7.) Second, they contend that in Griswold the mother and stepfather fell within the definition of "you" and "your" because they co-owned the son's vehicle, whereas here, only Sheri Harrelson but not her husband, David, owned the Jeep.[3] (Id. at 7–8.) The Harrelsons' arguments are unpersuasive.

As to the first argument, although the family in Griswold was seeking to reduce its costs by splitting insurance coverage, the court did not rely on this fact in its interpretation of the insurance policy finding no coverage. See Griswold, 560 S.E.2d at 864–66. As to the second argument, it is simply unsupported by the policy. There is no indication that the Owned Auto Exclusion applies only if David and Sheri Harrelson co-owned the Jeep; rather, "you" and "your" do not combine the Harrelsons but refer to David and Sheri individually. Other courts have interpreted

---

[3] Brent Cranford's co-ownership of the Jeep is immaterial here because he is only named in the Allstate Policy, not the USAA Policy

12

similar or identical insurance policy provisions to mean that "you" and "your" refer to the named insured and his or her spouse as alternatives, not a single entity. See MacLearn v. Commerce Ins. Co., 37 A.3d 393, 397 (N.H. 2012); Sheldon v. Hartford Ins. Co., 189 P.3d 695, 699 (N.M. Ct. App. 2008); Hacker v. Dickman, 661 N.E.2d 1005, 1007 (Ohio 1996); Sunshine Ins. Co. v. Sprung, 452 N.W.2d 782, 784 (S.D. 1990) (per curiam); Schelinski v. Midwest Mut. Ins. Co., 863 P.2d 564, 568 (Wash. Ct. App. 1993); Hillman v. Grace, 498 So.2d 1108, 1110 (La. Ct. App. 1986); Garrison v. Farm Bureau Mut. Ins. Co., 270 N.W.2d 678, 679 (Mich. Ct. App. 1978). The South Dakota Supreme Court in Sprung provides an instructive analysis:

> [I]t is significant that the words "you" and "your" are defined in the policy to refer to both [the named insured] *and* [the named insured's spouse]. Thus, whenever the words "you" and "your" are used in the policy, *both* [the husband] and [the wife] are included. Applying this definition to the [Owned Auto Exclusion] reveals that no liability coverage is extended for use of any vehicle other than the covered auto, owned by [named insured] *or* [the spouse] . . . .

Sprung, 452 N.W.2d at 784. The Harrelsons have cited no authority to distinguish these cases or provided any persuasive reason to support their urging of the definition of "you" and "your."

The court therefore finds that, properly understood, the Owned Auto Exclusion unambiguously excludes coverage for vehicles that either of the Harrelsons owns that are not specifically named as "covered autos" in the USAA Policy. The Jeep clearly falls

13

into this category because (1) Sheri owns the Jeep, and (2) it is not one of the covered autos under the USAA Policy. The fact that David Harrelson also did not own the Jeep is irrelevant. As a result, USAA correctly argues that the Owned Auto Exclusion applies, the exclusion precludes coverage of the Jeep accident, and USAA does not have a duty to defend.

### 2. Regular Use Exclusion (9.B.2.b)

Alternatively, USAA argues that Exclusion 9.B.2.b (the "Regular Use Exclusion") also applies and does not obligate it to provide coverage for the Jeep accident. That exclusion reads:

> B. We do not provide Liability Coverage for the ownership, maintenance or use of:
>
> . . .
>
> 2. Any vehicle, other than **your covered auto**, which is:
>
>> a. owned by any **family member;** or
>>
>> b. furnished for the regular use of any **family member.**
>
> However, this exclusion (B.2.) does not apply to your maintenance, or use of any vehicle which is:
>
> a. owned by a **family member;** or
>
> b. furnished for the regular use of a **family member**.

(Doc. 3-2 at 26.) USAA argues that because the Jeep was furnished for the regular use of Carlton and because "you" and "your" refers only to David and Sheri Harrelson, the exception to the Regular Use Exclusion does not apply. Rather, the exception covers only

14

use of the Jeep by the Harrelsons, who were not using it at the time of the accident. Therefore, USAA contends, the exclusion applies.

The Harrelsons respond by arguing that their complaint fails to allege facts sufficient to conclude that the Jeep was furnished for Carlton's regular use and that none of the pleadings alleges who used the Jeep, "just that the Jeep was being used by Carlton on the day of the [a]ccident." (Doc. 22 at 6.) They note that the USAA Policy does not define the phrase "regular use" and point to North Carolina cases for the proposition that the meaning of "regular use" in insurance policies varies according to the unique facts and circumstances of each case. See, e.g., N.C. Farm Bureau Mut. Ins. Co. v. Warren, 390 S.E.2d 138, 140 (N.C. 1990). North Carolina courts have determined that whether a vehicle is furnished for a non-owner's "regular use" depends upon the "availability of the [vehicle] for use by [the non-owner] and the frequency of its use by [the non-owner]." Whaley v. Great Am. Ins. Co., 131 S.E.2d 491, 498 (N.C. 1963). See also Jenkins v. Aetna Cas. & Sur. Co., 378 S.E.2d 773, 778 (N.C. 1989); N.C. Farm Bureau Mut. Ins. Co. v. Morgan, 675 S.E.2d 141, 142 (N.C. Ct. App. 2009); McGuire v. Draughon, 612 S.E.2d 428, 430–31 (N.C. Ct. App. 2005); Nationwide Mut. Ins. Co. v. Walters, 541 S.E.2d 773, 776 (N.C. Ct. App. 2001); Nationwide Mut. Ins. Co. v. Bullock, 203 S.E.2d 650, 652 (N.C. Ct. App. 1974); cf. Warren, 390 S.E.2d at 140 (categorizing the test

for "regular use" into two "class[es]" of cases). Thus, the Harrelsons contend, it is premature to conclude that the Regular Use Exclusion applies.

The Harrelsons' argument is contrary to their own complaint. The complaint specifically alleges that "Carl[ton] Cranford was the sole operator of the Harrelson/Cranford Jeep and treated it as his own and Brent Cranford, Sheri Harrelson and David Harrelson did not use the Jeep on a regular basis." (Doc. 3 ¶ 27.) Under the Harrelsons' own complaint, no other plausible conclusion can be reached other than that the Jeep was furnished for Carlton's regular use. Any attempt to avoid this clear construction through artful pleading is rejected.

* * *

Because both exclusions to coverage apply to the accident at issue, USAA has complied with the terms of its policy. Therefore, the Harrelsons' breach of contract claim fails as a matter of law. As the remaining claims depend on the contract claim, they likewise fail. See, e.g., Cordaro v. Harrington Bank, FSB, 817 S.E.2d 247, 256–57 (N.C. Ct. App. 2018) (holding that when a claim for breach of the covenant of good faith and fair dealing is based upon the same acts as a claim for breach of contract, the invalidity of the breach of contract claim is likewise fatal to the breach of good faith and fair dealing claim); Riders v. Hodges, 804 S.E.2d 242,

249 (N.C. Ct. App. 2017) (unfair and deceptive trade practices claim fails).

## III. CONCLUSION

For the reasons stated, the USAA Policy does not provide coverage for the Jeep accident alleged in Byrd's lawsuit, and USAA has no duty to provide a defense or indemnity for the litigation.

IT IS THEREFORE ORDERED that USAA's motion for judgment on the pleadings (Doc. 20) is GRANTED and the action is DISMISSED WITH PREJUDICE.

/s/   Thomas D. Schroeder<br>United States District Judge

November 27, 2019